IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARIYA TARASYUK, | ) | |
| | ) | No.  35482-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MUTUAL OF ENUMCLAW | ) | UNPUBLISHED OPINION |
| INSURANCE COMPANY, and JOHN | ) | |
| DOE, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — After a bench trial, the trial court dismissed Mariya Tarasyuk's suit

for payment under a homeowners insurance policy for a fire loss to a shop on her home

property.  The trial court also dismissed Tarasyuk's claims for bad faith, violation of the

Insurance Fair Conduct Act (IFCA), RCW 48.30.010-015, and violation of the Consumer

Protection Act (CPA), chapter 19.86 RCW.  We affirm based on the trial court's findings

of fact that support its conclusions of law.

FACTS

This appeal, more than most, is fact intensive.  The trial court thoroughly reviewed

the evidence and entered findings of fact based on the evidence.  As an appellate court,

our primary role is to assess if substantial evidence supports the critical findings of fact and if the findings support the conclusions of law, rather than thoroughly reviewing the entire trial court record. Nevertheless, because of the importance of the appeal to Mariya Tarasyuk, we have engaged in a thorough review of the record, including the trial transcript, published deposition transcripts, and trial exhibits. Our recitation of the lengthy facts and our analysis of extensive facts prolong this opinion.

This civil suit arises from the procurement of a Mutual of Enumclaw Insurance Company homeowner's insurance policy by plaintiff Mariya Tarasyuk for her West Richland property. The question presented to the trial court was whether the policy covered a fire at the shop on August 19, 2011, or whether a policy exclusion for property used in a business eliminated coverage for the fire.

Plaintiff Mariya Tarasyuk and her partner Vladimir Pugachev immigrated from Ukraine. Since 2007, the couple has resided together with their three children in a West Richland home. The home property includes a large outbuilding, alternatively called a garage, shop, and shed. The real property also includes smaller outbuildings, including playhouses.

Mariya Tarasyuk's and Vladimir Pugachev's residence sits on a large and open plot of land. The shed lies to the left of the house as one faces the front of the home. A short chain link fence surrounds a portion of the property in front of the shed. A car lift, a large oil tank and funnel, a gasoline barrel, blue oil containers, and other tools and

2

equipment sit inside the fence near the shop. A business sign attached to the fence and facing the road reads "M V Auto & Boat Repair." Ex. P-5. M stands for Mariya, and V stands for Vladimir. The sign includes a phone number for the repair business. Several vehicles parked in various stages of repair generally sit near the shop. A visitor typically can see the home, shed, vehicles, tools, and equipment from the roadway.

Neither Mariya Tarasyuk nor Vladimir Pugachev speaks, reads, or writes English well. Tarasyuk works as a caregiver forty hours per week and operates a house cleaning business. Pugachev cares for the children while Tarasyuk works, and he supplements the couple's small income by repairing vehicles and performing handyman work.

Mariya Tarasyuk held a business license for her cleaning business and the vehicle repair business, M&V Auto & Boat Repair. Pugachev printed business cards for the repair business. According to Tarasyuk, the repair business proceeded slowly with most customers being friends and family comfortable with Pugachev's broken English. In 2010, the couple earned $18,000, $4,475 of which came from M&V Auto and Boat Repair. In 2011, the car repair business garnered $3,870. The couple prepared a Schedule C Profit and Loss Statement for Business as part of its 2010 and 2011 federal income tax returns.

In 2010, a Benton County employee confronted Mariya Tarasyuk about conducting a car repair business on the property contrary to county ordinance. The employee told Tarasyuk that she needed a conditional use permit to conduct the business.

3

On June 4, 2010, Tarasyuk applied with the Benton County Board of Adjustment for a special use permit. On the application for that permit, Tarasyuk represented the size of the structure used for the business to be 1,200 square feet and provided the following answers to the county's questions:

> e. What is the total square footage of the detached building to be used for the business? 1200
> f. What is the total square footage that will be used for the business activity? 1200 square feet.

Ex. 104. 1,200 square feet is consistent with the size of the shop, not the residence.

Vladimir Pugachev did not perform vehicle repairs inside the shop. Cars could not fit inside the shop's door. Mariya Tarasyuk used the shed for storage.

As part of the repair business, Mariya Tarasyuk handed customers receipts for money paid. Tarasyuk sometimes kept copies of the receipts in the shop. Tarasyuk also stored some receipts for purchase of car parts in the shed. She kept bank statements for the repair business in the garage. Vladimir Pugachev kept car repair manuals in the shop. He often perused, while sitting in the shop, a large repair manual given as a gift.

On January 11, 2011, Mariya Tarasyuk met with Anna Mosesova, an employee of Harvey Monteith Insurance Agency, for the purpose of procuring a homeowners insurance policy. Agents of the Harvey Monteith Agency, including Mosesova, may bind and issue homeowners policies for Mutual of Enumclaw.

During the January 11 meeting, Mariya Tarasyuk and Anna Mosesova spoke

Russian because of Tarasyuk's limited English. Tarasyuk's principal language is Ukrainian. According to Mosesova, the Ukrainian and Russian languages are similar except for slang words.

On January 11, Mariya Tarasyuk, with assistance from Mosesova, completed a homeowners insurance policy application. The application contained the question, "'any farming or other business conducted on premises (including day/child care)?'" Report of Proceedings (RP) (May 8, 2017) at 155. Mosesova read the question to Tarasyuk in Russian. Tarasyuk answered no. Tarasyuk never mentioned to Mosesova that she and her partner operated a car repair business on the premises. After completing the application process, both Mosesova and Tarasyuk signed the homeowner's policy application.

Based on the agent's binding authority, Mutual of Enumclaw issued a homeowners policy, with an effective date of January 11, 2011, to Mariya Tarasyuk. The homeowners insurance policy provided $230,462 in coverage for the residence. The policy afforded $23,046 in coverage for structures on the property other than the home. The policy also provided coverage for personal property but with a limitation of:

> $5,000 on personal property, [on the "residence premises"] used at any time or in any manner for any "business" purposes.

Clerk's Papers (CP) at 721; Ex. 101 at 3. A policy exclusion read:

> We do not cover other structures: . . . [u]sed in whole or in part for "business."

5

CP at 720. The policy defined "business" to include:

> trade, profession or occupation.

CP at 721.

On January 14, 2011 and after the issuance of the homeowners insurance policy, Mutual of Enumclaw's underwriter Jill Anfinson requested, from Anna Mosesova, photographs of Mariya Tarasyuk's real property, including the front and back of the residence and all outbuildings. Anfinson requested the photographs because of the age of the property.

On January 17, 2011, Craig Baumgartner, another Harvey Monteith Insurance Agency employee, inspected the property and took photographs of the home and additional structures. One photo shows the sign on the fence surrounding the shop. Most viewers of the photograph would not be able to read the entire sign other than the acronym "MV" on the top of the white sign. To repeat, the sign read: "MV Auto & Boat Repair" and provided a phone number for the repair shop.

Mariya Tarasyuk testified that she noticed Craig Baumgartner present at her property taking photographs. Baumgartner explained he was taking pictures for the insurance company. Baumgartner asked Tarasyuk: "why do you have many cars on your property?" CP at 314. Tarasyuk answered: "I'm fixing them." CP at 314. Tarasyuk first testified that Baumgartner asked no further questions. Later Tarasyuk stated that

6

Baumgartner probably asked her if she repaired cars inside or outside of the shop and she responded with "the outside." RP (May 9, 2017) at 215.

When photographing residences for insurance policy purposes, Craig Baumgartner typically takes a photo of each of the four sides of the home and a photograph from the street. He might refrain from taking a photograph of a side of a house because of an interfering fence or because the snapping of the photograph would require trespassing on a neighbor's land.

In a December 21, 2011, letter from John Harrell, a claims representative for Mutual of Enumclaw, to counsel for Mariya Tarasyuk, Harrell wrote, in part:

> The procurement of [h]omeowners [insurance] [p]olicy number HO11287249 was handled by Harvey-Monteith Insurance Agency in Kennewick ("HMIA"). Craig Baumgartner of HMIA conducted an inspection of the insured location in connection with the application for the policy and saw tools and equipment in the area of the detached garage or shop building on the property. Mr. Baumgartner inquired about use of the shop and was told it was used to repair vehicles or boats belonging to friends and family members only.

Ex. 7 at 36. At trial, Baumgartner could not remember speaking to anyone, in January 2011, about the use of the shop. Baumgartner did not deny such a discussion and testified the comments by Harrell "made sense." RP (May 8, 2017) at 106.

Typically, when Craig Baumgartner inspects a residence and observes some activity or structure that might lead to a homeowners insurance policy exclusion, Baumgartner alerts the insurance agent to the observation. Baumgartner recalls seeing no

structure or activity on January 17 on Mariya Tarasyuk's property that caused him concern such that he would have notified Anna Mosesova.

Craig Baumgartner took four photographs, from his cellphone, of Mariya Tarasyuk's and Vladimir Pugachev's residence. The photos are dark in resolution.

The Mutual of Enumclaw claims file includes a partial e-mail message, from January 18, 2011, from Craig Baumgartner to Anna Mosesova. The claims file only contained the headings for the e-mail and not the content. On the same claims file page lies a January 19, 2011, Anna Mosesova e-mail that forwards photographs to Jill Anfinson, an underwriter at Mutual of Enumclaw. The following message accompanied the photographs:

> Hi Jill,
> Here are the pictures you requested, they do have a garage unattached from the house.

Ex. 7 at 41. According to Anfinson, she received four photographs only of the residence and playhouses. The claims file does not explain the omission of the entire e-mail message sent by Baumgartner to Mosesova on January 18 and does not confirm whether Mosesova sent all of the photographs taken by Baumgartner to Anfinson. According to Baumgartner, he would have sent all passable photographs he took to Mosesova.

After receiving the four photos of the home, Jill Anfinson researched Mariya Tarasyuk's property online. The Internet information did not suggest that the homeowner

8

conducted a business on the property. Nevertheless, from her research, Anfinson learned of an outbuilding on the property.

On January 19, 2011, Jill Anfinson e-mailed Anna Mosesova that she saw small sheds in the photographs, but not the unattached garage. Anfinson asked about the dimensions of the garage. Anfinson wished to ensure that the garage's coverage equated to the value of the outbuilding. Anfinson also requested to Anna Mosesova at the Harvey Monteith Insurance Agency to obtain photos of the outbuilding. She had asked for photographs of both the front and the back of the home, but did not expressly seek photographs of both sides of the outbuilding.

Anna Mosesova did not respond to Jill Anfinson's January 19 e-mail message. Anfinson sent additional requests to Anna Mosesova for photographs of the outbuilding. After receiving no response, Anfinson spoke with her supervisor, Pat Boyles. Boyles considered the lack of a response unusual. Jill Anfinson wrote to Anna Mosesova, at Harvey Monteith, on February 25, 2011 regarding Mariya Tarasyuk:

> Hi Anna,
> I am running out of time and will need to decline this policy if we do not receive the photos of the shop, the HO48 added for the detached shop with the [mother] in law unit and a cost guide for that mother in law unit.

Ex. 7 at 42.

On February 25, 2011, Anna Mosesova sent Jill Anfinson two photographs of the shed. The photographs showed only the two sides of the shed. The photographs did not

9

show the car activities in front of the shed. The photographs were not the same size as the earlier pictures of the residence, although taken with the same camera.

Craig Baumgartner testified at trial that he took all of the photographs sent to Mutual of Enumclaw underwriters, but he does not know if he went twice to Mariya Tarasyuk's property to snap photos. The photographs of the shed enjoyed brighter lighting than the photographs of the residence and the respective sets of photos used a different megapixel size. Most photographs taken by Baumgartner showed the date taken and identified the camera used. At least one Baumgartner photograph lacked the date and make of camera. All photographs had numbers with not all photographs being in sequential numbers.

During trial, plaintiff's counsel asked Anna Mosesova if, assuming she saw photographs depicting the tools, equipment, and cars in front of the shop, would she conclude that the owner of the property conducted a business on the property. She answered: "Not necessarily. I would ask first." RP (May 8, 2017) at 143. When shown the photograph that included the fence with the M&V business sign, Mosesova testified that she could not read the sign. Counsel asked Mosesova to assume the sign read: "M&V Auto and Boat Repair," and then counsel asked if Mosesova, based on the sign, would assume that Mariya Tarasyuk conducted a business on the property. Mosesova replied that she would not assume anything but instead would inquire from the homeowner about activity on the property. According to Mosesova, the homeowner may

10

have earlier conducted a business on the property and kept the sign but ceased the business.

At trial, Jill Anfinson testified that, had she seen photographs of repair equipment and cars stationed in the front of the shop, her mind would figuratively envision red flags waving. Because she does not underwrite business policies, Anfinson would have approached her supervisor for assistance.

An e-mail found in the Mutual of Enumclaw claims file and written on September 23, 2011, by Mutual of Enumclaw underwriter Pat Boyles read, in part:

> Insured: Tarasyuk, Maria . . .
> fu [follow up] to review claim and set dnr for renewal 01 11 12
> agency apparently told that there was no business use of the
> detached structures. [P]hotos provided by agency appear to have
> deliberately not show[n] front & all of the boat/vehicles parked there.

Ex. 7 at 49.

In this lawsuit, Mariya Tarasyuk contends that Harvey Monteith Insurance Agency employees destroyed or altered photographs taken by Craig Baumgartner and also altered digital metadata regarding the photographs. Mariya Tarasyuk may also contend that Baumgartner took no photographs of the cars and repair equipment in the front of the garage in order to deceive Mutual of Enumclaw underwriters.

Anna Mosesova agreed that the Mutual of Enumclaw file included photographs of only two sides of the shed and generally the insurance company wishes the agent to photograph on all four sides of a building. Anna Mosesova denied altering any

11

photographs. Mosesova does not believe anyone intentionally modified any photographs of Mariya Tarasyuk's residence or shed. She assumed that Craig Baumgartner encountered some obstacle in photographing all sides. Mosesova added that Baumgartner may not have photographed the shed from the street because of the distance between the street and the shed. Mosesova also denied knowledge of the existence and working of metadata.

Craig Baumgartner insisted that he took photographs sequentially, and he denied modifying any photographs. He might have deleted from the camera unfocused or overexposed photographs. Baumgartner also denied erasing any picture metadata. Baumgartner claimed he did not know how to change pixel size. Craig Baumgartner held no motivation to omit photographing all four sides of the shop or to destroy or modify photographs or metadata. Baumgartner earned no commission from the sale of the homeowners insurance policy to Mariya Tarasyuk. Harvey Monteith Insurance Agency's provision of false information to Mutual of Enumclaw would jeopardize the agency's relationship with Enumclaw and negatively impact its bonus from Enumclaw.

On March 1, 2011, Anna Mosesova wrote an e-mail to Jill Anfinson that read:

> Ok so the insured told me that the only thing that she do have is a shop but no other extra kitchen or anything else and I do have pictures of the shop that I will forward to you. Is there anything else that we need to know about the shop? Her boyfriend repairs his cars there and helps out family member with vehicle problems but that's it as far as I know.

Ex. 122. (Grammar in original). Anfinson then wrote a note to herself:

> Home has 2 kitchens, one tiny kitchenette upstairs, main kitchen downstairs. [O]utbuildings, detached shop, and a playhouse for the kids. [R]ec'd request to add HO48 at $60,000. [S]hop is used for personal use, per Anna, boyfriend repairs his cars there, no biz exposures.
> Roof was replaced in 2010.

Ex. 122.

Jill Anfinson deemed the two photographs of the sides of the garage received from Anna Mosesova adequate for her purposes. Nevertheless, Mutual of Enumclaw concluded that $20,000 in coverage for structures on the property other than the home did not suffice because of the size of the shop. Anfinson advised Mosesova that an additional $60,000 in coverage was needed to insure the 1,200 square foot shed. Enumclaw amended the policy to add this additional coverage for "other structures." CP at 33-34. The Harvey Monteith Insurance Agency did not then know about any business conducted on the property. Tarasyuk's premium increased to account for the additional coverage. Although the higher premium disappointed Tarasyuk, she still bought it and paid her premium.

During the process of increasing the amount of coverage on the shop, Mariya Tarasyuk visited Anna Mosesova at the Harvey Monteith Insurance Agency. We do not know the date of the visit. Mosesova then asked Tarasyuk: "'Is there a business?'" RP (May 8, 2017) at 158-59. Mosesova asked the question because photographs taken by Craig Baumgartner showed what appeared to be a car repair business. Tarasyuk replied:

No. Mosesova also questioned if "they repair cars?" RP (May 8, 2017) at159. Tarasyuk answered: "'If we do? There are cars out there, and, yes, it's friends and families and that's it.'" RP (May 8, 2017) at 159. Tarasyuk described the repair business as a "hobby." She told Mosesova that Vladimir Pugachev performs repairs outside. We assume the two spoke in Russian and Ukrainian, and the questions and answers are translations from the mother tongues. In this appeal, Mariya Tarasyuk does not claim any mistake in communications due to language barriers.

During this second visit, Mariya Tarasyuk failed to inform Anna Mosesova of the following facts: she had a business license for the car and boat repair business, she registered the trade name of M&V Auto and Boat Repair, she once advertised the business in the phone directory, she printed business cards with the business name, she garnered customers besides friends and family, the business reaped a profit of almost $4,500 in 2010, she completed a business schedule for her federal income tax return, and she applied to Benton County for a special use permit to operate a business on her real property. If Tarasyuk had informed Mosesova of these factors, Mosesova would have directed Tarasyuk to purchase a business policy.

During the second visit between Anna Mosesova and Mariya Tarasyuk, Mosesova told Tarasyuk that if she operated a business on the real property, she would need to procure business insurance. Mosesova works as an agent only for personal lines and would not have assisted Tarasyuk in applying for business insurance. Mosesova insists

14

that she never sought to hide any business operations of Mariya Tarasyuk from Mutual of Enumclaw.

On August 19, 2011, an electrical fire damaged Mariya Tarasyuk's and Vladimir Pugachev's West Richland shop. The fire destroyed some car business customer receipts, some auto parts purchases receipts, car repair manuals, and all bank statements.

Mariya Tarasyuk filed a claim for the loss of the shop and personal property stored therein. Tarasyuk completed an inventory of personal property destroyed in the shop fire. The list included car batteries, two starters, testers, a coupler, compressor, drills, other tools, toolboxes, engine oil, transmission fluid, CD diagnostic programs, two computers, and a scanner. On the claim form, she marked that she used all of the items in the business. She testified that a Mutual of Enumclaw employee directed her to check the box regarding business use if the item on the list was used in part in the business.

Mutual of Enumclaw claims loss adjuster, John Harrell, investigated and discovered that Mariya Tarasyuk possessed a business license for a car repair operation and utilized the shed to store car repair tools, equipment, and repair manuals. Mutual of Enumclaw paid Tarasyuk for the loss of the personal property in the amount of $36,700, but declined coverage for fire loss to the shed because Tarasyuk used the shed in whole or in part for the auto repair business.

PROCEDURE

Mariya Tarasyuk filed suit for damages against Mutual of Enumclaw based on its refusal to pay for the fire damage to the outbuilding shed. The complaint alleged causes of action for: breach of contract, breach of the duty of good faith, estoppel from denial of coverage, Insurance Fair Conduct Act violations, and Consumer Protection Act violations. Tarasyuk hired photograph expert Eric Archer to review photographs taken of Tarasyuk's property by Craig Baumgartner and metadata from the digital photographs.

The parties filed cross motions for summary judgment. Tarasyuk sought judgment as a matter of law against Mutual of Enumclaw, and Mutual of Enumclaw sought dismissal of all claims as a matter of law. The trial court granted summary judgment to Mutual of Enumclaw. Tarasyuk appealed.

In 2015, this court reversed dismissal of Mariya Tarasyuk's claims as a matter of law and remanded for trial. Part of our decision read:

> The second part of the inquiry is whether the shed was indeed being used for business and excluded from coverage. Business use of an outbuilding, as stated in the contract, includes trade, profession, or occupation. As a preliminary matter, there is no question that Ms. Tarasyuk's automobile repair activity is a business. She had a license for the business, she advertised, and she paid taxes on the income. Although the repair business was not her full time trade, profession, or occupation, there is no significant dispute that the repair activity was run as a business, even if just for the benefit of family and friends.
> However, a genuine issue of material fact remains as to whether the *shed* was being used for Ms. Tarasyuk's business. Enumclaw claims that the shed was used for business because Ms. Tarasyuk had a business license and the shed was listed on the license application. However, Ms.

16

Tarasyuk claimed that the work was completed outside the building. She presented competing evidence showing large repair equipment and vehicles outside the shed and the shed doors were too small to allow vehicles to enter the building. She also presented testimony that the shed was used for general storage, not for business use. Here, all reasonable inferences are to be drawn in favor of Ms. Tarasyuk, the nonmoving party. Thus, whether the business use exclusion applied to the shed is a disputed issue of fact to be decided by the trier of fact.

Summary judgment was not appropriate on the breach of contract claim. While we can decide as a matter of law that Enumclaw owed a duty to cover the house and outbuildings that were not used for business, a disputed issue of fact remains as to whether Ms. Tarasyuk used the shed for her business.

. . . .

In actions where the insured claims that coverage was unreasonably denied, the insured has the initial burden of showing that the insurer acted unreasonably. *[Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 486, 78 P.3d 1274 (2003)]. In response, the insurer has the opportunity to identify reasonable grounds for its action. *Id.* If reasonable minds could not differ that the denial was based on reasonable grounds, then summary judgment is appropriate in favor of the insurer. *Id.*

However, simply raising a theoretical reasonable basis for the insurer's conduct does not necessarily end the inquiry. *Id.* The insured may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that factors outweigh the alleged reasonable basis. *Id.* "If ... reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's actions, then summary judgment is not appropriate." *Id.*

Here, the trial court based its denial on *Suter v. Virgil R. Lee & Son, Inc.*, 51 Wn. App. 524, 754 P.2d 155 (1988). *Suter* held that "'[t]he general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection.'" 51 Wn. App. at 528 (quoting *Jones v. Grewe*, 189 Cal. App. 3d 950, 956, 234 Cal. Rptr. 717 (1987)). We agree with Ms. Tarasyuk that this was not the appropriate standard to apply to her bad faith claim. Ms. Tarasyuk's claim is not based on the adequacy of the coverage. Instead, her claim is based on the reasonableness of Enumclaw's actions and whether she was treated fairly.

Summary judgment was not appropriate based on Enumclaw's duty to act in good faith. Ms. Tarasyuk met her burden of showing that Enumclaw breached this duty and acted in bad faith by leading her to believe that the shed was covered under the policy to collect premiums. She maintains that the bad faith occurred in one of two ways: (1) Enumclaw accepted premiums for the shed knowing that it would not be covered and subsequently denied coverage or, alternatively, (2) Enumclaw accepted premiums for the shed because it did not find Ms. Tarasyuk was using the shed for business, and then changed its interpretation after the fire and denied coverage of the shed. In either case, she maintains that Enumclaw acted unreasonably when it denied coverage after it was aware of the shed's use and collected the premiums.

Both of the scenarios involve disputed facts concerning Enumclaw's knowledge and actions. M[s]. Tarasyuk claims that Ms. Mosesova and Mr. Baumgartner knew, or reasonably should have known, how the shed was being used. According to Enumclaw's investigation notes, both agents suspected business use after the property was inspected. Additionally, Ms. Tarasyuk told Ms. Mosesova about her business after Ms. Mosesova inquired about the use of the shed. Even with this knowledge, Enumclaw insured the shed and required an additional premium due to the size of the shed.

Ms. Tarasyuk also presented evidence that showed an intent by Enumclaw's agents to conceal the use of the shed to the underwriter. Ms. Mosesova delayed sending pictures to Enumclaw's underwriter and, when she did finally send them, they were altered. Even Enumclaw's underwriter suspected that someone altered the pictures so the boats and cars were not shown.

In response, Enumclaw contends that it did not act in bad faith because Ms. Tarasyuk told the local agents that the shed was not used for business purposes and the denial was reasonably based on the business use. Furthermore, Enumclaw contends that its actions were reasonable because it did not have a responsibility to investigate Ms. Tarasyuk's use of the property. Enumclaw maintains that the shed was always covered, just not for business use.

Resolution of these factual disputes is necessary to Ms. Tarasyuk's bad faith claim. Whether Enumclaw knew of the particular use prior to collecting premiums or changed its position on the use when it denied coverage are disputed issues of material fact crucial for determining reasonableness. The reasonableness of Enumclaw's actions is to be

18

> determined in light of all the facts and circumstances of the case. Because of the disputed material facts, summary judgment was not appropriate.

*Tarasyuk v. Mutual of Enumclaw Insurance Co.*, No. 32389-7-III, slip op. at 4-7 (Wash. Ct. App. Sept. 1, 2015) (Unpublished) http://www.courts.wa.gov/opinions/pdf/323897.unp.pdf

On remand, the trial court conducted a bench trial. During the course of the trial, the court, in addition to entertaining live testimony, published depositions of Mariya Tarasyuk, Vladimir Pugachev, Craig Baumgartner, Patricia Boyles, Jill Anfinson, and John Harrell. Our statement of facts included excerpts from those depositions.

The trial court watched a videotape preservation deposition of Mariya Tarasyuk's expert witness, Eric Archer. According to Archer, the photographs of the residence were taken on a different day than the photographs of the shed because of the lighting in the respective sets of pictures. The photographs of the home were taken at dusk and photographs of shed during daylight. Some photographs were resized and possibly cropped. Based on Archer's review of the photographs and metadata, he also concluded there were three missing photographs because of a missing sequence in the metadata numbers of the pictures. Nevertheless, Archer conceded that a program on Craig Baumgartner's or Anna Mosesova's computer may have performed the resizing and deletion. Craig Baumgartner's cellphone camera may have deleted poor quality and duplicative photographs.

The trial court ruled in favor Mutual of Enumclaw. The trial court thereafter entered its findings of fact and conclusions of law and its judgment for Enumclaw. The findings read, in part:

4. Within the context of the preparation of the initial quote, Tarasyuk clearly and unequivocally denied that a business was operated on the premises. Tarasyuk also signed a homeowner's application, which contained the question, "Any farming or other business conducted on premises (including day/child care)?" The response to this question on the application was "no."

. . . .

9. At the time of the issuance of the Enumclaw policy to Tarasyuk, she and her partner operated an auto repair business on the premises. They advertised to the general public. They offered their services to the general public. They had business cards made. They had a business license, and had registered the tradename of the business, "M&V Auto Repair." They had previously applied for a conditional use permit from Benton County so they could lawfully conduct the business on the premises.

10. Tarasyuk had a profit motive as evidenced by the profit made in both 2010 and 2011 from the auto repair business, which was reported as income to the IRS.

11. None of the car or boat repairs performed by Tarasyuk were performed within the outbuilding.

12. Tools and equipment used in the repair of vehicles were stored within the outbuilding. Parts were stored within the outbuilding. Computers and printers used in the business were stored within and used within the outbuilding. Diagnostic scanners were stored in the outbuilding. Service manuals and CDs for diagnostic purposes were stored within and used within the building. Electricity for the compressor and other equipment was accessed from electrical outlets in and on the outbuilding. All business bank records were stored within the outbuilding. Customer receipt books and parts receipts were kept within the outbuilding.

13. After the issuance of the homeowner's policy to Tarasyuk, pursuant to Enumclaw underwriting requirements, a Harvey Monteith agent, Craig Baumgartner, went to the Tarasyuk property to take photographs. While on the premises he asked Tarasyuk why so many cars were parked there. Tarasyuk answered merely that they "fixed them." She

did not identify any of the business attributes identified in paragraph 12 above.

14. Enumclaw underwriters, without photographic evidence of the property or knowledge of the business being conducted there, noted that the outbuilding in question was large enough that it would not be "insured to value" if destroyed, based upon the insufficient coverage found under Coverage B. Enumclaw therefore insisted that additional coverage of $60,000 be added to Coverage B, representing the estimated cost to replace the outbuilding in question. This was done through an H048 Endorsement on the property, which increased the premium, which was paid by Tarasyuk. The H048 coverage was not required because of a suspected business, rather it was required because of the size of the outbuilding.

15. As part of this process involving the H048 Endorsement, Tarasyuk and Mosesova had an additional conversation where Tarasyuk again reported to Mosesova that they did not operate a business. Rather, she represented that the cars were repaired as a "hobby." Tarasyuk did not inform Mosesova of any of the business attributes identified above in paragraph 12. Based on this representation and failure to disclose relevant information, Mosesova reasonably concluded that Tarasyuk was not operating a business, even in light of the indications to the contrary, including the sign on the property.

16. During the underwriting process, Enumclaw requested that the agency send photographs of the shed/outbuilding which was the reason for the H048 Endorsement. Mosesova subsequently sent two photographs of the outbuilding, taken by Baumgartner, to Enumclaw's underwriters. These photographs did not show the front of the building or show evidence of a business.

17. The two photographs of the shed/outbuilding were smaller than the photographs taken of the residence and had metadata removed. Mr. Baumgartner lacked the skill and knowledge to alter the photographs. He had no motivation to do, as he earned no commission on the sale, and providing false information to Enumclaw would jeopardize the agency's relationship with Enumclaw, and perhaps impair the loss/ratio of the agency and negatively impact its bonus from Enumclaw. There is no evidence that Mr. Baumgartner is familiar with the proposed Tarasyuk policy beyond the belief that it was intended to be a "regular" homeowner's policy. He was simply sent to take photographs, a task which required two visits.

21

18. There was evidence that photographs taken by Baumgartner would not be sent by the agency to Enumclaw if they were out of focus, poorly taken, or overexposed. They would then be deleted and not sent to Enumclaw.

19. There is no evidence that Mosesova attempted to hide the photographic evidence of the business. Mosesova had no motivation to do so, as she was not earning a commission on this policy. She lacked the knowledge and skills to alter photographs. Tarasyuk presented evidence through Eric Archer, an expert in photographic editing, which supported the contention that the photographs of the shed/outbuilding were smaller in size than photographs taken of the residence, and had the metadata removed, which removed the date they were taken. Mr. Archer admitted that the photographs could be resized or have metadata removed due to programs that may have been on Baumgartner's or Mosesova's computers. Mr. Archer admitted that it is common, based upon cellphone usage (Baumgartner used his cellphone to take the subject photos), that photos would not turn out, would be repetitive or duplicative, or commonly deleted if they are of poor quality.

20. Although Enumclaw underwriter Patricia Boyles indicated after the loss that the photographs appeared to have been deliberately taken so as to omit the pictures of the front of the shed/outbuilding or show the business, there was no evidence this belief extended to the agent's intentional wrongdoing.

CP at 720-24.

The trial court entered in part the following conclusions of law:

1. Tarasyuk was clearly operating a "business" on the insured premises as defined by the policy, and under Washington law.

2. The policy clearly and unambiguously excluded coverage for separate structures that were used in whole or in part for business purposes. Operation of a business within a separate structure is a business risk not anticipated or covered under a homeowner's policy. . . .

3. Storage of tools, parts, books, records, service manuals, and equipment by Tarasyuk was a necessary ancillary activity of any car and boat repair business. It is undisputed that these activities occurred within the subject outbuilding. Therefore, the business was conducted "in whole or in part" within the outbuilding.

22

. . . .

5. Pursuant to RCW 48.01.030, both Enumclaw and Tarasyuk had a duty of good faith and honesty in dealing with the other.

6. Notwithstanding repeated opportunities to do so, Tarasyuk represented that she did not conduct a business on her property, referred to it merely as a "hobby," and did not disclose to the Harvey Monteith agents the many attributes of her "business" as identified above in paragraph 12.

7. Based upon Tarasyuk's representations, neither Enumclaw nor its agents were aware that a business was being conducted on the premises. They were certainly aware of car repair activities, but not a "business" as defined by the policy and by Washington law. Although Tarasyuk may have disclosed to Mosesova that small sums of money may have been paid by family and friends as part of her "hobby" auto repair, she did not disclose the total income earned, so neither Enumclaw nor its agents were aware of her profit motive.

8. Therefore, Enumclaw did not accept premiums knowing that a business was being conducted on the premises, and they did not apply different definitions of a business, either when the policy was issued or after the loss had occurred.

. . . .

11. The claims for bad faith, for violations of the Consumer Protection Act, and for violation of the Insurance Fair Conduct Act have not been established by the evidence.

CP at 725-27.

## LAW AND ANALYSIS

### Findings of Fact

Before addressing the merits of Mariya Tarasyuk's appeal, we review several procedural questions attended to this appeal. We ask whether we deem the trial court's factual findings as the truth and whether this appellate court's former ruling bound the parties to any facts.

23

Mariya Tarasyuk assigns no error to the trial court's findings of fact. Assignments of error directed only to conclusions of law do not raise for review findings of fact. *J.D. English Steel Co. v. Tacoma School District Number 10*, 57 Wn.2d 502-04, 358 P.2d 319 (1961). We treat unchallenged findings of fact as verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Mariya Tarasyuk contends that she assigned error to findings of fact 4, 13, and 15 because she references those findings in the body of her brief. Nevertheless, a mention of the findings in the factual or argument of a brief does not suffice. RAP 10.3(g) declares, in part:

> (g) **Special Provision for Assignments of Error**. . . . A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

In reviewing the body of the brief, we observe that Mariya Tarasyuk does not directly challenge any finding of fact as opposed to challenging the application of the facts to the conclusions of law. Regardless, our independent review of the record shows that ample evidence supports each finding of fact.

Much of Mariya Tarasyuk's argument on appeal questions the credibility of Harvey Monteith Insurance Agency employees Anna Mosesova and Craig Baumgartner with regard to snapping of photographs and forwarding of the photographs to

underwriters at Mutual of Enumclaw. Tarasyuk suggests that either Baumgartner or Mosesova withheld forwarding photographs of the front of the shed so that Mutual of Enumclaw would issue the policy without demanding a higher premium for business use of the property. Many arguments also surround Tarasyuk's contention that Craig Baumgartner and Anna Mosesova knew, based on a physical review of the property or a viewing of the photographs, the full extent to which Mariya Tarasyuk employed her property and the shop.

The trial court found Mosesova and Baumgartner credible with regard to their respective explanations of untaken, cropped, or missing photographs. The trial court found Craig Baumgartner and Anna Mosesova credible with regard to their testimony that they concluded that Mariya Tarasyuk's partner only performed limited repairs for family and friends based on the comments of Tarasyuk. The trial court deemed believable the two agents' testimony that they never concluded, at least before the fire, that Tarasyuk used the shop for business purposes. Most of Tarasyuk's arguments on appeal impliedly challenge these findings of the trial court. Appellate courts do not render judgments regarding witness credibility; that is the exclusive province of the trier of fact. *Hahn v. Department of Retirement Systems*, 137 Wn. App. 933, 942, 155 P.3d 177 (2007).

No. 35482-2-III
*Tarasyuk v. Mutual of Enumclaw Insurance Co.*


Earlier Appeal

This court previously reversed the trial court's grant of summary judgment of dismissal in favor of Mutual of Enumclaw. This court reversed the summary judgment order based on material issues of genuine fact. *Tarasyuk v. Mutual of Enumclaw Ins. Co.*, No. 32389-7-III, noted at 1050 (Wash. Ct. App. Sept. 1, 2015).

In this second appeal, Mariya Tarasyuk claims this court, in its ruling in the first appeal, decided, as a matter of law, that storage of business equipment and materials in the shop did not constitute a business use such that storage of car repair equipment and tools in the shed did not subject the shed to the business use exclusion. According to Tarasyuk, this court remanded for a factual determination as to whether vehicle repair activity occurred inside the shed because only repair activity inside the shop barred the structure from coverage. Tarasyuk forwards these contentions based on her assertion that she admitted that items stored in the shed were sometimes used to repair cars for pay. Therefore, as a matter of law, according to Tarasyuk, this appellate court had to have decided that storage of business equipment and materials was not a business use. Otherwise we would have affirmed summary judgment in favor of Mutual of Enumclaw.

We have scoured our 2015 unpublished opinion reversing summary judgment in favor of Mutual of Enumclaw. We find no language in the opinion about Mariya Tarasyuk's admitting to storing car repair equipment in the shop. Assuming Tarasyuk conceded such in response to the summary judgment motion, Tarasyuk either did not

26

inform this court of the concession or somehow the admission escaped us. Since our opinion did not mention any concession, our opinion did not preclude the trial court from considering storage of equipment and tools as being whole or in part a business use of the structure. Any such ruling about storage of equipment anyway would have missed the facts found by the trial court that Mariya Tarasyuk advertised to the general public for car repairs, kept business records inside the shop, obtained a business license for a car repair business, and stated in an application for a conditional use permit that she employed the structure in a business.

Mariya Tarasyuk cites no law in support of her contention that the trial court violated a ruling of this court that storage of equipment did not qualify as a business use. Tarasyuk may rely on the law of the case doctrine. Most commonly, the doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation. *State v. Johnson*, 188 Wn.2d 742, 755, 399 P.3d 507 (2017). We did not hold in the first appeal that storage of business equipment does not involve a business use.

Mariya Tarasyuk also contends that this court, in its 2015 decision, held that she proved her bad faith claim. We already quoted a major portion of the bad faith discussion in our earlier opinion. We recognize an ambiguity in the decision when we wrote: "Ms. Tarasyuk met her burden of showing that Enumclaw breached this duty and acted in bad faith by leading her to believe that the shed was covered under the policy to

27

collect premiums." *Tarasyuk v. Mutual of Enumclaw Insurance Co.*, No. 32389-7-III, slip op. at 6 (Wash. Ct. App. Sept. 1, 2015). This sentence fell within our discussion as to whether Tarasyuk presented sufficient facts to defeat a summary judgment motion to dismiss the bad faith claim. We intended the sentence to refer only to the burden of producing some evidence to defeat a summary judgment motion and not as a ruling, as a matter of law, that Tarasyuk established a bad faith claim or that any burden of proof shifted from Tarasyuk to Mutual of Enumclaw for purposes of trial. The burden of proof of establishing a claim for bad faith remains on the insured by preponderance of the evidence. *Smith v. Safeco Insurance Co.*, 150 Wn.2d 478, 485-86, 78 P.3d 1274 (2003). Regardless, the trial court concluded that Mutual of Enumclaw properly denied coverage and thus Tarasyuk showed no bad faith.

## Policy Coverage

We now move to the merits of Mariya Tarasyuk's appeal. Tarasyuk contends that the trial court unreasonably concluded that she used the shed for a business purpose when Mutual of Enumclaw's own agents determined that Tarasyuk did not use the shed for such purpose and thereby bound Enumclaw. Tarasyuk also argues the trial court erred when excluding coverage for the fire loss when Tarasyuk used the inside of the shop for storage, but not physically for auto repair. Tarasyuk conflates the two arguments. We separate the two contentions.

Mariya Tarasyuk's first argument is factually erroneous and may be legally incorrect. Tarasyuk emphasizes that Craig Baumgartner and Anna Mosesova knew of the many cars in front of the shop and at least Baumgartner knew of repair equipment in front of the shop. Tarasyuk then highlights that, if underwriters Jill Anfinson and Pat Boyles had seen photographs of the cars and repair equipment, one or both would have undergone serious concerns about the conduct of a business on the property. Tarasyuk's factual highlights, however, omit important facts as found by the trial court. Tarasyuk ignores the facts that both Baumgartner and Mosesova developed concerns about whether Tarasyuk conducted a business in the shop. Both asked questions. Baumgartner asked about all of the cars. Baumgartner forwarded his photographs to Mosesova, who then wondered if Tarasyuk conducted a business. Anna Mosesova questioned Tarasyuk about a business. Tarasyuk stated that Vladimir Pugachev performed repairs only for family and friends and that the repair work was in the nature of a "hobby," not a business.

Mariya Tarasyuk contends that Anna Mosesova and Craig Baumgartner concluded that the shed was not used for business purposes because Vladimir Pugachev performed the repair work outside the shed. The evidence does not support this contention. Baumgartner did not become involved in determining whether the shed was used for business purposes. Mosesova concluded that it was not used as a business because Pugachev only worked for family and friends and did not invite the public to bring cars for repairs. Mosesova knew that Pugachev and Tarasyuk received some money for the

repairs but this knowledge does not establish that they knew the shed was used for business purposes. The money could have merely reimbursed Pugachev for the cost of the parts.

In detailing the facts, Mariya Tarasyuk ignores that Mutual of Enumclaw agents asked her if she conducted a business on the premises and she insisted twice that no business was conducted. Tarasyuk failed to disclose to Craig Baumgartner or Anna Mosesova the numerous business attributes of the car repairs established by the testimony heard by the trial court. Assuming Mosesova or Baumgartner concluded no business was conducted, they did so primarily on the basis of comments by Tarasyuk. If conditions had been as described by Mariya Tarasyuk when asked, coverage probably would have been afforded.

Mariya Tarasyuk argues that Anna Mosesova and Craig Baumgartner determined that storage of business items inside the shed did not qualify the shed as used in the business for coverage purposes. No testimony supported this factual assertion. Neither knew that Tarasyuk stored equipment, tools, computers, business records, and bank statements inside the shop.

Based on all the evidence, the trial court found that Anna Mosesova reasonably concluded that Tarasyuk did not operate a business, even in light of the indications to the contrary, including the sign on the property. The trial court also found that Craig Baumgartner lacked familiarity with the proposed Tarasyuk homeowner's insurance

policy beyond the belief that the policy would be a "regular" homeowners policy. Baumgartner played the role of taking photographs, nothing else. Mariya Tarasyuk assigns no error to these findings of fact.

Mariya Tarasyuk contends that Craig Baumgartner's and Anna Mosesova's knowledge of cars and repair equipment being in the yard binds their principal, Mutual of Enumclaw, to the conclusion that Tarasyuk did not engage in a business. Tarasyuk cites cases that stand for the principle that the knowledge of the agent is imputed to the principal, known as the principal principle. But Tarasyuk cites no law that an agent's knowledge of possible business activity on insured property and the insured answering in the negative to the agent's questioning about whether a business is conducted leads to liability of the insurer when in fact a business is conducted.

Mariya Tarasyuk's factual assertions lend themselves more to an argument that the knowledge of Anna Mosesova and Craig Baumgartner should estop Mutual of Enumclaw from denying coverage. She asserted the argument of coverage by estoppel before the trial court, but she does not assert this contention on appeal. Generally, no circumstances can extend the coverage or restrictions on the coverage by the doctrines of estoppel or waiver. *Carew, Shaw & Bernasconi v. General Casualty of America*, 189 Wash. 329, 336, 65 P.2d 689 (1937).

Mariya Tarasyuk may challenge the trial court's ruling that use of the shed for storing car repair tools, equipment, parts, business computers, and business records and

use of the shed for access to electricity constituted the performance of business "in whole or in part" within the meaning of the Mutual of Enumclaw homeowners insurance policy exclusion. Presumably Tarasyuk argues these facts, as a matter of law, do not prevent coverage regardless of what conclusions Anna Mosesova and Craig Baumgartner drew from the little facts they observed. Nevertheless, Tarasyuk cites no decisions holding that storage of business tools, equipment, and records inside a structure do not fall under a business exclusion for damage to the structure. Tarasyuk does not argue on appeal that the evidence as found by the court with regard to what occurred inside the shed did not constitute a business use.

RAP 10.3(a)(6) directs each party to supply, in his or her brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012).

## Bad Faith

Mariya Tarasyuk contends that the trial court determined that, as a matter of law, Mutual of Enumclaw did not engage in bad faith. Tarasyuk cites no law that concludes bad faith is always a question of law. Nor does Tarasyuk explain why she asserts that the trial court ruled as a matter of law. A review of the record, including the findings of fact and the conclusions of law, shows that the trial court resolved disputed facts and drew

inferences from the facts to conclude that Mutual of Enumclaw did not commit bad faith. Therefore, we do not exercise de novo review of the trial court's dismissal of Tarasyuk's bad faith claim.

Insurers in Washington possess a duty to act in good faith and deal fairly with their insured. *Smith v. Safeco Insurance Co.*, 150 Wn.2d at 484 (2003). A Washington statute confirms this duty of good faith:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.

RCW 48.01.030.

Mariya Tarasyuk in part contends that Mutual of Enumclaw unreasonably denied coverage. To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Smith v. Safeco Insurance Co.*, 150 Wn.2d at 484. When an insured claims the insurer unreasonably denied coverage, the insured possesses the initial burden of showing that the insurer acted unreasonably. *Smith v. Safeco Insurance Co.*, 150 Wn.2d at 484. In response, the insurer has the opportunity to identify reasonable grounds for its action. *Smith v. Safeco Insurance Co.*, 150 Wn.2d at 484-85. An insurer's denial of coverage based on a reasonable interpretation of the insurance policy does not lead to bad faith liability. *Kirk v. Mount Airy Insurance Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998).

33

Washington law defines a "business" for insurance purposes as one that has a "profit motive" and which was conducted on a regular and continuous basis. *Stuart v. American States Insurance Co.*, 134 Wn.2d 814, 816-17, 953 P.2d 462 (1998). A de minimis receipt of money to reimburse for costs is not a "profit motive" under Washington law. *Stuart v. American States Insurance Co.*, 134 Wn.2d at 822-23. We conclude that the trial court did not err when ruling that Mutual of Enumclaw's denial of coverage was based on a reasonable interpretation of the insurance policy.

Mariya Tarasyuk also asserts Mutual of Enumclaw acted unreasonably and deceptively by failing to maintain clear guidelines for its agents about what constitutes business use, by its agents knowing that Tarasyuk conducted a business on the premises yet disclaiming knowledge, by its issuing Tarasyuk an insurance policy under one definition of business use and later applying a different definition of business use when it denied the fire claim, by an agent taking photos of the property contrary to Mutual of Enumclaw protocol, by the agent snapping photographs that deliberately hid the business activities occurring around the shed, and by shifting blame to Tarasyuk when claiming that she withheld information about business use of the shed. These assertions run counter to the trial court's findings of fact and may be unsupported by law.

We have already rejected Tarasyuk's factual contention that Craig Baumgartner and Anna Mosesova knew of the business or that one or both believed in business activities occurring. On numerous occasions, Mariya Tarasyuk had the chance to explain

34

all aspects of her vehicle repair business, yet she failed to be forthcoming. She could have precluded the denial of coverage by disclosing all activities and purchasing a business policy. Tarasyuk even responded no when asked on the insurance application whether she conducted a business on the property. Even if both agents knew repair work occurred on the property and even if Baumgartner inspected the property and saw tools and vehicles around the shed, each agent reasonably concluded that no "business" occurred on the premises based on conversations with Tarasyuk.

Mutual of Enumclaw did not alter its interpretation after the fire to deny coverage, or in the alternative, it did not accept premiums knowing the shed would not be covered. Enumclaw reasonably believed no business occurred on the premises until it learned of all aspects of the repair activities post-fire.

Mariya Tarasyuk contends different agents of Mutual of Enumclaw held different views of what constituted business use for purposes of the homeowners insurance policy exclusion. Tarasyuk cites no law that an insurance company engages in bad faith if two agents of the insurer hold different views or definitions of what constitutes a business use. When attorneys of the same law firm or judges on the same court may differ with regard to the meaning of an insurance policy provision or the application of the provision in discrete circumstances, we can hardly fault an insurer, whose agents hold differing views of how to construe policy language. We know of no obligation that imposes on a selling agent a duty to understand the application of a policy exclusion under all possible

35

circumstances under the sun.

Factually Mariya Tarasyuk contends that John Harrell had a different view of a business use from the view of Craig Baumgartner and Anna Mosesova, because Baumgartner and Mosesova allegedly concluded, at the time Mutual of Enumclaw issued the policy, that Tarasyuk's use did not qualify as a business use, but Harrell determined, after the fire loss, that Tarasyuk's use of the shed constituted a business use. In so arguing, Tarasyuk ignores that Harrell possessed more facts than Baumgartner and Mosesova.

Mariya Tarasyuk argues that Craig Baumgartner failed to follow Mutual of Enumclaw protocol when photographing the buildings. He did not take photographs of all sides of the shop. Nevertheless, Tarasyuk cites no law that a violation of an insurance company's protocol necessarily implies bad faith. Tarasyuk cites no law that imposes any obligation on an insurance carrier or an insurance agent to take any photographs of a structure when insuring the property, let alone to take photographs of all sides of the building. The trial court found that Baumgartner engaged in no deceptive practice when taking his pictures. Tarasyuk does not challenge this finding.

Mariya Tarasyuk emphasizes the e-mail of Pat Boyles that Craig Baumgartner deliberately omitted from his photographs the cars and repair equipment placed in front of the shed. This e-mail does not bind the trial court in determining whether Baumgartner acted in bad faith. Boyles did not know the entire situation when she wrote

36

her message. After hearing the testimony of Baumgartner, the trial court held discretion in finding that Baumgartner engaged in no deception.

Mariya Tarasyuk's final argument concerning bad faith is that Enumclaw's agents attempted to hide the business activities that occurred around the shed in the photographs that were taken when Tarasyuk applied for insurance. Nevertheless, the trial court found as a matter of fact that the agents intended to hide no facts. Tarasyuk assigns no error to these findings.

## CPA and IFCA Violations

On appeal, Mariya Tarasyuk does not present any argument relating to her causes of action under the Consumer Protection Act and Insurance Fair Conduct Act. Tarasyuk does not cite to any case law referencing those claims or to any statutes regarding those acts. An appellate brief should contain argument in support of every issue presented for review, including citations to legal authority and references to the relevant parts of the record. RAP 10.3(a)(6); *Farmer v. Davis*, 161 Wn. App. 420, 432, 250 P.3d 138 (2011).

## Misrepresentation

Mariya Tarasyuk contends that the trial court mistakenly denied insurance coverage based on her representations in the absence of any affirmative defense of misrepresentation. We agree with Tarasyuk that misrepresentation constitutes an affirmative defense and any misrepresentation in obtaining insurance must be proved by clear, cogent and convincing evidence. *Queen City Farms, Inc. v. Central National*

*Insurance Co. of Omaha*, 126 Wn.2d 50, 96, 882 P.2d 703, 891 P.2d 718 (1994). We disagree that the trial court based its decision on misrepresentation.

The trial court found that Mariya Tarasyuk denied that a business was operated on the premises, including when she signed an application for insurance. The trial court found that Tarasyuk described the car repairs as a "hobby." The trial court found that Tarasyuk failed to disclose when asked about a business on the operation the business attributes that led the court to conclude she conducted a business. Finally, the trial court found that, based on the representations and failure to disclose of Tarasyuk, Anna Mosesova reasonably concluded that Tarasyuk was not operating a business, even in light of the indications to the contrary, including the sign on the property.

One might imply from the trial court's findings of fact that the court believed Mariya Tarasyuk misrepresented facts to Mutual of Enumclaw agents. Nevertheless, the trial court did not base its decision denying coverage on the misrepresentations. The trial court denied coverage because the facts as found to have existed at the time of the fire loss showed a business use of the shop. The trial court did not void the policy based on misrepresentation.

Before opening statements, the trial court commented that the parties had not uploaded trial briefs so he was not as familiar with the case as he wished. The court surmised, however, that the insurance company claimed Mariya Tarasyuk engaged in misrepresentations. Based on this pretrial comment, Tarasyuk concludes that the trial

court must have denied coverage because of misrepresentations by her. We disagree. The findings of fact and conclusions of law entered after opening statements, the evidence, and closing summations show otherwise.

CONCLUSION

We affirm the trial court's dismissal of Mariya Tarasyuk's complaint with prejudice.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.