614

[No. 42118-6-II.   Division Two.   September 11, 2012.]

CHERYL D. JOY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

616

*Frances R. Hamrick* and *Douglas M. Palmer* (of *Busick Hamrick PLLC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Anastasia R. Sandstrom, Assistant*, for respondent.

*William D. Hochberg* and *Rachel V. Hamar* on behalf of Washington State Labor Council, amicus curiae.

¶1 VAN DEREN, J. — Cheryl Joy appeals the trial court's order granting judgment as a matter of law[1] to the Washington State Department of Labor and Industries (L&I). She argues that the trial court erred in concluding that RCW 70.14.120(3)[2] precludes a court's determination that spinal cord stimulation was a medically necessary and proper treatment in her case.[3] We hold that the trial court did not err in granting L&I judgment as a matter of law because RCW 70.14.120(3) precludes both court orders requiring L&I to provide spinal stimulation benefits and hearings to determine whether spinal cord stimulation is medically necessary or proper in individual cases. We affirm.

---

[1] The parties referred to this motion at the trial court as a motion for a directed verdict. But motions for a directed verdict were renamed " 'motions for judgment as a matter of law' " in 1993. *Delgado Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001) (quoting *Litho Color, Inc. v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 298 n.1, 991 P.2d 638 (1999)). Accordingly, we refer to and review this motion as a motion for judgment as a matter of law under CR 50.

[2] RCW 70.14.120(3) provides:

A health technology not included as a covered benefit under a state purchased health care program pursuant to a determination of the health technology clinical committee [(HTCC)] or for which a condition of coverage established by the committee is not met, *shall not be subject to a determination in the case of an individual patient as to whether it is medically necessary, or proper and necessary treatment*.

(Emphasis added.)

[3] Joy also argues that the trial court and L&I's interpretation of the statute violates her due process rights and right to a jury trial under the Washington Constitution. Amicus curiae Washington State Labor Council (WSLC) additionally raises a different due process argument and an argument under article II, section 37 of the Washington Constitution.

Joy additionally argues that the trial court erred in retroactively applying RCW 70.14.120(1) and RCW 70.14.120(3) to her claim because it arose before the HTCC definitively determined that spinal stimulation was not a covered treatment that L&I could approve. We briefly address these issues but do not reach these issues based on insufficient briefing and failure to raise these issues in a timely manner.

## FACTS

¶2 On October 16, 2006, Joy suffered a neck injury at work resulting in chronic cervical neuropathic pain. L&I allowed her workers' compensation claim and provided medical treatment, including physical therapy, cortisone injections, surgeries, and pain medications.

¶3 Joy subsequently unsuccessfully requested L&I to authorize a spinal cord stimulator as necessary and proper medical treatment for her injury. The Industrial Insurance Medical Advisory Committee, which advises L&I on coverage decisions, had previously determined that coverage should not be allowed for spinal cord stimulation, based on a study showing that spinal cord stimulation showed a potential for harm, not benefits.

¶4 Joy appealed to the Board of Industrial Insurance Appeals (Board), and an industrial appeals judge (IAJ) issued a proposed decision concluding that Joy was not a good candidate for a spinal cord stimulator for her cervical condition, the procedure is not rehabilitative or curative, and the procedure is not within the standards of good practice for neurosurgery and pain management. Joy unsuccessfully petitioned the Board for review of the IAJ's decision, but the Board adopted the proposed IAJ decision in denying her appeal.

¶5 Joy then appealed to the superior court solely on the issue of whether spinal cord stimulation was a necessary and proper medical treatment for her that L&I should authorize. On October 22, 2010, while Joy's appeal in the trial court was pending, the Health Technology Clinical Committee (HTCC) found that spinal cord stimulation was "less safe than alternatives, is an invasive procedure, and has many adverse events," and it determined that state health care programs will not cover spinal cord stimulation as a necessary and proper procedure. Clerk's Papers at 17.

¶6 Following Joy's presentation of her case to the jury, L&I moved under CR 50 for judgment as a matter of law

because the HTCC's determination meant that L&I could not approve such treatment under RCW 70.14.120(3). Joy argued that RCW 70.14.120(4)[4] still allowed the jury to decide whether spinal cord stimulation was a necessary and proper treatment in her case.

¶7 The trial court concluded that as a matter of law RCW 70.14.120(3) precluded L&I from authorizing spinal cord stimulation in any case, and it granted L&I's CR 50 motion. The trial court harmonized RCW 70.14.120(3) and .120(4), stating, "You can still appeal. You've your right to appeal but your issue on appeal cannot be whether or not this uncovered benefit is medically necessary or proper and necessary." Report of Proceedings at 15. Joy appeals.

## ANALYSIS

### I. CR 50 STANDARD OF REVIEW

■ ¶8 RCW 51.52.140 provides that "the practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court as in other civil cases."[5] We review motions for judgment as a matter of law de novo. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 530-31, 70 P.3d 126 (2003). A trial court properly grants judgment as a matter of law when, viewing the evidence and all inferences in a light most favorable to the nonmoving party, substantial evidence does not exist to support the nonmoving party's claims. *Schmidt v. Coogan*, 162 Wn.2d 488, 491, 173 P.3d 273 (2007). "Substantial evidence" is the quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

---

[4] RCW 70.14.120(4) states, "Nothing in chapter 307, Laws of 2006 diminishes an individual's right under existing law to appeal an action or decision of a participating agency regarding a state purchased health care program. Appeals shall be governed by state and federal law applicable to participating agency decisions."

[5] Title 51 RCW deals with industrial insurance.

## II. MEDICAL PROCEDURES AUTHORIZED UNDER STATE HEALTH CARE PLANS

¶9 Joy agrees that RCW 70.14.120(3) precludes L&I from authorizing medical procedures that the HTCC determines are not necessary and proper and that are consequently not covered under state health care plans. Nevertheless, she argues that the Board and reviewing courts may order L&I to authorize such treatment. L&I responds that when read in the context of the entire statutory scheme, the Board and reviewing courts must affirm L&I's denial of medical procedures that the HTCC has declared are not covered by state-provided benefits.

### A. Standard of Review

¶10 We review de novo issues of statutory interpretation. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9. If a statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). We discern plain meaning not only from the provision in question but also from closely related statutes and the underlying legislative purposes. *Murphy*, 151 Wn.2d at 242. If a statute is susceptible to more than one reasonable interpretation after this inquiry, then the statute is ambiguous and we may resort to additional canons of statutory construction or legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

¶11 We give effect to all statutory language, considering statutory provisions in relation to each other and harmonizing them to ensure proper construction. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 560, 14 P.3d 133 (2000). We avoid construing a statute in a manner that results in "unlikely, absurd, or strained

consequences." *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003).

### B. Creation of Health Care Authority and HTCC

¶12 In 2006, the legislature established the state health care authority (HCA) for purposes, in part, of "minimizing the financial burden which health care poses on the state, its employees, and its charges, while at the same time allowing the state to provide the most comprehensive health care options possible." RCW 41.05.006(2); LAWS OF 2006, ch. 299, § 1. As part of this task, the legislature also provided that the HCA "shall coordinate state agency efforts to develop and implement *uniform policies* across state purchased health care programs." RCW 41.05.013(1) (emphasis added); LAWS OF 2006, ch. 307, § 8. "State purchased health care" or "health care" includes "medical and health care, pharmaceuticals, and medical equipment purchased with state and federal funds" by various state agencies, including L&I. RCW 41.05.011(21).

¶13 The legislature also created the HTCC, an 11-member panel of practicing licensed physicians and health professionals[6] selected by the HCA's administrator in consultation with participating state agencies. LAWS OF 2006, ch. 307, § 2; *see also* RCW 70.14.090 (enacted statute). The HTCC determines whether health technologies[7] selected for review by the HCA's administrator[8] will be included as a covered benefit in health care programs of participating agencies, i.e., L&I, the HCA, and the Department of Social and Health Services. RCW 70.14.080(6), .110(1).[9]

---

[6] RCW 70.14.090(1) and (2)(a) detail the criteria for HTCC membership.

[7] RCW 70.14.080(5) defines "health technology" as "medical and surgical devices and procedures, medical equipment, and diagnostic tests."

[8] *See* RCW 70.14.100 (procedures and criteria for selection of health care technologies for HTCC review).

[9] RCW 70.14.110(1) provides:

## C. HTCC Coverage Determinations

¶14 RCW 70.14.120(1) provides that when the HTCC makes a coverage determination for a particular health technology, "[a] participating agency *shall* comply with a determination of the [HTCC]." (Emphasis added.) The plain language of RCW 70.14.120(1), read together with the requirement in RCW 70.14.120(3) that "[a] health technology not included as a covered benefit under a state purchased health care program . . . shall not be subject to a determination in the case of an individual patient as to whether it is medically necessary, or proper and necessary treatment" unambiguously precludes L&I from determining whether health technologies subject to an HTCC noncoverage determination are a necessary and proper medical treatment in an individual claimant's case and from authorizing a request for such treatment. And Joy and L&I agree that the HTCC's noncoverage determinations for particular health technologies require L&I's compliance with the determination.

## D. Reviewing Boards and Courts Are Not Exempt from HTCC Determinations

¶15 Although Joy acknowledges that RCW 70.14.120(1) expressly requires compliance with HTCC determinations by participating agencies, she argues that "[n]othing in RCW 70.14.120(3) limits the ability of *reviewing agencies or the courts* to make an individual determination on whether the treatment is medically necessary and proper." Br. of

---

The committee shall determine, for each health technology selected for review under RCW 70.14.100: (a) The conditions, if any, under which the health technology will be included as a covered benefit in health care programs of participating agencies; and (b) if covered, the criteria which the participating agency administering the program must use to decide whether the technology is medically necessary, or proper and necessary treatment.

RCW 70.14.110(2)(a) states that in making its coverage determinations, the HTCC "[s]hall consider, in an open and transparent process, evidence regarding the safety, efficacy, and cost-effectiveness of the technology as set forth in the systematic assessment conducted under RCW 70.14.100(4)."

Appellant at 6 (emphasis added). Accordingly, she urges us to adopt an interpretation that allows the Board or the superior court to make a "necessary and proper [medical treatment]" determination for an individual claimant and to issue an order or writ of mandamus requiring L&I to authorize such treatment. Br. of Appellant at 6. Her argument fails for several reasons.

¶16 But Joy misreads RCW 70.14.120(3) to refer to "participating agencies" as those bound by HTCC coverage determinations. RCW 70.14.120(1) mandates that participating agencies, such as L&I, comply with HTCC determinations. But RCW 70.14.120(3) does not contain the phrase "participating agencies" and, thus, its applicability is not limited to participating agencies; it unequivocally mandates that health technologies subject to HTCC blanket noncoverage determinations "shall not be subject" to individualized medically necessary and proper determinations.

¶17 We do not add words to unambiguous statutes when the legislature has chosen not to include that language. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Here, RCW 70.14.120(3) is unambiguous[10] and we may not insert the words "participating agency." RCW 70.14.120(3) is an absolute proscription against state health care coverage for health technologies the HTCC deems are not covered. Accordingly, RCW 70.14.120(3) precludes the Board and reviewing courts from making such a determination.[11]

---

[10] Moreover, to hold that a statute is ambiguous, it must be subject to multiple, *reasonable* interpretations. As we discuss below, it is unreasonable to interpret RCW 70.14.120(4) in a manner authorizing the Board, juries, and reviewing courts to violate RCW 70.14.120(3) and order L&I to violate RCW 70.14.120(1).

[11] Joy argues that the Board and reviewing courts are capable of making such a determination even where L&I has not made such a determination and, thus, misapprehends the general role of the Board and reviewing courts in workers' compensation appeals. *See* Reply Br. of Appellant at 9 ("[T]hose injured workers who believe they will benefit retain the right to appeal and bear the cost of proving, through expert testimony, that they would benefit from a Spinal Cord Stimulator procedure."). But, on review, the question ultimately before the Board and the courts is to review the propriety of the agency's decision.

¶18 Joy also argues that interpreting RCW 70.14.120(3) to prohibit the Board or reviewing courts from ordering L&I to authorize noncovered health technologies conflicts with RCW 51.36.010's provision that " '[u]pon the occurrence of any injury to a work[er] . . . he or she shall receive proper and necessary medical and surgical services.' " Reply Br. of Appellant at 16. But after the HTCC determines under RCW 70.14.110's criteria that a particular health technology will not be covered, that health technology is no longer "subject to a determination in the case of an individual patient as to whether it is medically necessary, or proper and necessary treatment." RCW 70.14.120(3).

¶19 A HTCC noncoverage determination is a determination that the particular health technology is not medically necessary or proper in *any* case. Because RCW 51.36.010 entitles injured workers only to medically necessary and proper treatment, there is no conflict between it and RCW 70.14.120(3), which prohibits the Board or reviewing courts from authorizing noncovered health technologies.

E. Conflict between RCW 70.14.120(3) and RCW 70.14.120(4)

¶20 Joy further argues that RCW 70.14.120(3) must be interpreted by taking into consideration RCW 70.14.120(4). She contends that RCW 70.14.120(4) "must allow [her] to appeal to the Board and the Courts a decision of [L&I] to deny authorization of a spinal cord stimulator." Br. of Appellant at 7.

¶21 RCW 70.14.120(4) provides, "Nothing in chapter 307, Laws of 2006 diminishes an individual's right under existing law to appeal an action or decision of a participating agency regarding a state purchased health care program. Appeals shall be governed by state and federal law applicable to participating agency decisions." We agree that neither RCW 70.14.120(3) nor .120(4) prevents Joy from *appealing* L&I's denial of such treatment. But, on appeal, RCW 70.14.120(1) and .120(3), the more specific statutes,

control the question of whether L&I's denial of authorization for a noncovered health technology was proper.

¶22 RCW 70.14.120(1) mandates that participating agencies, such as L&I, comply with HTCC determinations. Further, RCW 70.14.120(3) prohibits individualized medically necessary and proper determinations for health technologies subject to HTCC blanket noncoverage determinations. This prohibition may not diminish an injured worker's right to appeal but it does "diminish" an injured worker's right to relief on appeal of denial of such treatment by L&I. If RCW 70.14.120(4) is interpreted as Joy urges—to authorize reviewing bodies to actually determine that such treatments are medically necessary and proper in the individual case, contrary to the HTCC determination—the result conflicts with RCW 70.14.120(3). Moreover, such an interpretation would force L&I to choose between compliance with a board or court order not to comply with the HTCC's determination, thus violating RCW 70.14.120(1), or compliance with the HTCC's determination, thus violating the Board's or court's decision.

¶23 Because the statutes conflict, we may rely on legislative history to assist in their interpretation. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 211, 118 P.3d 311 (2005). Section 6 of the bill, as originally passed by the legislature but vetoed by the governor, stated, "The [HCA] administrator shall establish an open, independent, transparent, and timely process to enable patients, providers, and other stakeholders to appeal the determinations of the [HTCC]." 2 HOUSE JOURNAL, 59th Leg., Reg. Sess., at 1201 (Wash. 2006). In her veto message, Governor Christine Gregoire stated:

> I strongly support [the bill] and particularly its inclusion of language that protects an individual's right to appeal. Section 5(4) of the bill states that "nothing in this act diminishes an individual's right under existing law to appeal an action or decision of a participating agency regarding a state purchased health care program. Appeals shall be governed by state and federal law applicable to participating agency decisions." This

is an important provision and one that I support whole-heartedly.

I am, however, vetoing Section 6 of this bill, which establishes an additional appeals process for patients, providers, and other stakeholders who disagree with the coverage determinations of the [HTCC]. The health care provider expertise on the clinical committee and the use of an evidence-based practice center should lend sufficient confidence in the quality of decisions made. Where issues may arise, I believe the individual appeal process highlighted above is sufficient to address them, without creating a duplicative and more costly process.

2 HOUSE JOURNAL at 1587.

¶24 "The Governor's veto statement is a part of legislative intent." *New Castle Invs. v. City of LaCenter*, 98 Wn. App. 224, 231, 989 P.2d 569 (1999). "In exercising the veto power, the Governor performs a legislative function and therefore must be considered to be acting as part of the Legislature." *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 213, 848 P.2d 1258 (1993).

¶25 The legislature did not act to override the governor's veto of section 6, and we must presume that the legislature accepted the bill as modified by the veto. The legislature's failure to override the veto and reinstate a process to review HTCC noncoverage determinations is consistent with the legislature's express intent in creating the HCA to, in part through the HTCC, "develop and implement *uniform policies* across state purchased health care programs." RCW 41.05.013(1) (emphasis added); LAWS OF 2006, ch. 307, § 8. We conclude that the legislative history does not support an interpretation of RCW 70.14.120(4) allowing injured workers relief on appeal from L&I's denial of medical treatment that the HTCC has determined is not covered.

¶26 It is also our task, when asked to construe statutes, to avoid construing a statute in a manner that results in "unlikely, absurd, or strained consequences." *Glaubach*, 149 Wn.2d at 833. Given the legislature's express intent to promote uniform policies across state purchased health

care programs, forbidding individualized, piecemeal coverage determinations by L&I—one of the agencies actually charged with administering the workers' compensation statutes—but authorizing piecemeal determinations by reviewing bodies would not be reasonable and would lead to absurd results.

¶27 Accordingly, we turn to the canon of statutory construction that more specific statutes prevail over general ones when a conflict exists. *Flight Options, LLC v. Dep't of Revenue*, 172 Wn.2d 487, 504, 259 P.3d 234 (2011). And our Supreme Court favors interpretations resolving a conflict by giving effect to a number of statutes. *See Flight Options*, 172 Wn.2d at 504. Here, RCW 70.14.120(1) specifically addresses L&I's compliance with HTCC determinations and RCW 70.14.120(3) specifically addresses and precludes individualized medically necessary and proper determinations. In contrast, RCW 70.14.120(4) generally addresses appeals. An interpretation that RCW 70.14.120(3) controls over RCW 70.14.120(4) gives effect to RCW 70.14.120(1), RCW 70.14.120(2),[12] and RCW 70.14.120(3) and implements the legislature's stated purpose to create uniformity across state purchased health care plans. Thus, we hold that RCW 70.14.120(3) controls over RCW 70.14.120(4), and Joy may not obtain relief on appeal from L&I's denial of coverage for treatment, when L&I's denial is based on the HTCC's determination of noncoverage for such treatment under all state health care plans.[13]

---

[12] If the HTCC has not acted to forbid a specific treatment or modality of treatment for coverage, L&I is authorized to make coverage determinations. RCW 70.14.120(2).

[13] It appears that if the legislature did not intend to deprive injured workers of some manner of appealing the impact of HTCC noncoverage determinations on their treatment requests (whether through directly appealing an HTCC determination or seeking an individualized medically necessary and proper determination), the conflicting language of RCW 70.14.120(3) and .120(4) failed to achieve that intention. The vetoed section 6 would have resolved conflicts within the statute. With section 6 in place, claimants would have had a clear avenue for addressing L&I's denials of treatment based on HTCC determinations; claimants could have directly challenged the HTCC's determination. Allowing claimants to

¶28 We hold that the trial court did not err in granting L&I's CR 50 motion, and Joy's claims fail.

III. RETROACTIVITY, DUE PROCESS, AND RIGHT TO JURY TRIAL

¶29 Joy also argues that the trial court erred in retroactively applying RCW 70.14.120(1) and .120(3) to her claim because it arose before the HTCC definitively determined that spinal stimulation was not a covered treatment that L&I could approve. We disagree.

██ ██ ¶30 Absent a clear expression of legislative intent that a statute applies retroactively, statutes affecting a substantive or vested right cannot apply retroactively. *Bodine v. Dep't of Labor & Indus.*, 29 Wn.2d 879, 887-88, 190 P.2d 89 (1948). Statutes that are remedial in nature

do so would have been consistent with the legislature's intent to create uniformity; either the HTCC's determination would be upheld and continue to apply to all requests for the subject health technology or the determination would be overturned and would not apply to any requests for such treatment. No piecemeal situations where HTCC determinations applied to some requests but not others would exist.

Furthermore, section 6's inclusion would have given effect to RCW 70.14.120(4). Where the HTCC had not made a determination, a claimant's right to appeal the participating agency's action based on its own determination—i.e., L&I's denial of a particular, covered treatment—would not be affected. Where the HTCC had made a noncoverage determination—and, thus, the true target of an injured worker's claim would be the HTCC's determination that the particular treatment is not necessary or proper in *any* case—a claimant could challenge the HTCC's determination. Likewise, allowing a claimant to challenge an HTCC determination, as opposed to seeking an end-run individualized determination through a reviewing body, would have given effect to RCW 70.14.120(3).

In the absence of section 6, however, it appears there is no statutory procedure for substantively challenging HTCC determinations. HTCC proceedings are subject to the Open Public Meetings Act of 1971, chapter 42.30 RCW, as well as statutory requirements for providing notice when it selects a health technology for review, allowing a public comment period, and providing notice of how to participate in the public comment period. RCW 70.14.090, .110(2)(b), .130(1)(a). The HTCC must also consider whether to review its own noncoverage determinations at least once every 18 months. RCW 70.14.100(2). But RCW 70.14.090(4) provides that the HTCC is not an agency for purposes of the Administrative Procedure Act (APA), chapter 34.05 RCW, and, thus, its determinations (which are *binding* on participating state agencies) are not subject to APA review. Nonetheless, the existence of judicial review procedures and adequate remedies under other statutes is not before us in this appeal. And the absence of remedies under RCW 70.14.120 for workers denied coverage by L&I due to HTCC determinations is, nonetheless, a legislative problem that must be addressed by the legislature, not the courts.

may apply retroactively if such application furthers its remedial purpose. *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). "A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right." *Miebach v. Colasurdo*, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984).

¶31 Even assuming without deciding that the trial court retroactively applied RCW 70.14.120(3) to her case, Joy stated in her opening brief only that she had a vested right "to receive treatment under RCW 51.36.010." Br. of Appellant at 8. Other than this conclusory statement, she provided no further argument or citation to authority establishing that she had some sort of vested or substantive right under RCW 51.36.010. Only in her reply brief did Joy offer any argument or authority supporting her conclusory statement in her opening brief that she had a vested or substantive right affected by the trial court's alleged retroactive application of the statute. Joy also raised her constitutional due process argument and her right to jury trial argument for the first time in her reply brief.

¶32 Joy contends that L&I raised these issues for the first time in its response brief by arguing that application of RCW 70.14.120 to her claim did not affect substantive or vested rights. But L&I's discussion was responsive to Joy's slender retroactivity argument in her opening brief. Her suggestion of her alleged vested or substantial rights required responsive discussion by L&I of whether the statute's application actually affected a substantive or vested right.

¶33 We do not consider Joy's conclusory vested rights argument in her opening brief that was unsupported by citation to authority. *See* RAP 10.3(a)(6), 10.4. "Such '[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (alteration in original) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). And we

do not consider Joy's vested rights or constitutional due process and jury trial right arguments raised for the first time in her reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).[14] Accordingly, we do not address Joy's constitutional arguments or her argument that the trial court erred in retroactively applying a statute that affected her vested rights.

IV. ATTORNEY FEES

¶34 Joy requests attorney fees as a prevailing party under RCW 51.52.130 and RAP 18.1. Because her claims fail, we deny her request.

¶35 We affirm the trial court's dismissal of Joy's claims based on L&I's CR 50 motion.

JOHANSON, A.C.J., and QUINN-BRINTNALL, J., concur.

Reconsideration denied October 26, 2012..

Review denied at 176 Wn.2d 1021 (2013).

---

[14] The WSLC moved to file an amicus brief raising for the first time in this case a different due process challenge and a state constitutional challenge under article II, section 37. Our commissioner partially granted the motion, allowing briefing on the due process challenge while noting that it may not properly be before this court, but denying briefing on the article II, section 37 challenge. WSLC filed a motion to modify the commissioner's ruling. In Joy's supportive briefing, she repeated and expanded her misrepresentations that L&I had first raised both these issues in its responsive brief. We granted WSLC's motion to modify the commissioner's ruling and allowed WSLC to file an amicus brief on both issues and allowed oral argument by amicus. After fully considering the briefing on these issues, as well as oral argument, we do not resolve this matter based on constitutional arguments. On review, we decline to address issues raised for the first time on appeal, in reply briefs, or only in amicus briefs. *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 567 n.5, 252 P.3d 885 (2011).