IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36087-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MILFORD LEE "BEAR" BUTCHER, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Milford Butcher appeals, on many grounds, his multiple

convictions for rape of a child and child molestation and his sentencing. He raises *Batson*

challenges to jury selection. He claims insufficient evidence supports his convictions.

He asserts that rape convictions and child molestation convictions covered the same acts

and thereby violate double jeopardy principles. Finally, he argues that some of the

convictions constitute the same criminal conduct for purposes of sentencing. We reject

his assignments of error.

FACTS

We glean the facts from trial testimony. We recite the facts in a version favorable

to the State. The names of all minors and the last names of the minors' parents are

pseudonyms. Because the minor children called the appellant Milford Butcher "Bear,"

this opinion sometimes refers to him as "Bear."

The alleged victims are three young children, two of whom are brother and sister

and the third who is a cousin of the other two. The children were neighbors of the

accused, Milford Butcher. Because the victims are minors, we do not know specific

dates of the alleged rapes or molestations.

In 2001, Ryan and Paula Gilbert moved to a ten acre plot of land in rural Spokane

County. Five years later on August 14, 2006, their daughter, Karen, was born. Paula

Gilbert's brother, Luke Hartzog, and his wife Desiree, reside with their children across

the street from the Gilberts' residence. Elaine Hartzog was born on November 9, 2005,

and Lowell Hartzog was born on April 10, 2007. Karen, Elaine, and Lowell are the

alleged victims. Paula Gilbert and Luke Hartzog operate a dairy farm nearby.

Milford "Bear" Butcher and his wife, Kathi Butcher, were neighbors to the

Gilberts and the Hartzogs. In 2005, Paula Gilbert hired Kathi as a part-time milker at the

dairy. The Gilberts and the Butchers thereafter developed a close friendship.

Milford and Kathi Butcher operated, on their rural property, a business known as

"Puppy Boot Camp," which business crate trained, house broke, and socialized ten-week-

old puppies. Report of Proceedings (RP) at 944-45. From 2010 to 2014, the three

children, Karen Gilbert, Elaine Hartzog, and Lowell Hartzog frequented the Butchers'

dog operation. The three often walked the puppies, fed them, and cleaned up their waste.

2

The Butchers paid the children for the time they spent caring for the dogs. The only adults involved at the Puppy Boot Camp operation were Milford and Kathi Butcher.

In October 2011, Paula Gilbert heard from the Hartzog children that Milford Butcher directed them to pull down their pants, and, while jumping on the bed with them, Butcher's pants fell down. Paula expressed concerns to Kathi Butcher, who promised her that nothing of the sort happened at the Butcher residence. Paula Gilbert trusted Kathi and concluded that the Hartzog children mistakenly reported the misconduct. The three children thereafter continued to assist at Puppy Boot Camp.

According to Karen Gilbert, Milford Butcher permitted the children to drive his Jeep on a gravel road in the neighborhood. The driving child sat on his lap to steer the car while the other children sat in the back passenger compartment. On many occasions as Karen sat on Butcher's lap and steered the Jeep, Butcher touched her vagina with his finger both over and under her clothes. On some occasions, Butcher's finger penetrated Karen's vagina. Milford Butcher also touched Karen Gilbert while inside his residence. Karen and her cousins played hide and seek, and, during one such game, Butcher ran his hand over Karen's vagina on top of her clothes while she hid in a dog kennel. Butcher threatened to shoot Karen if she told anyone that he touched her.

Elaine and Lowell Hartzog experienced the same touching from the hands of Milford Butcher. Butcher touched Lowell's penis, under Lowell's clothes, on more than one occasion. Sometimes, Butcher ordered Lowell to remove Lowell's clothes and then

asked Lowell to touch Butcher's penis. Butcher also touched Lowell's privates on top of his clothes when Lowell sat on his lap while driving the car. Butcher tickled Lowell on his privates. Kathi Butcher was not present when Butcher touched him. Butcher told Lowell he should not tell anyone about the touching. Butcher also showed Lowell his gun.

Milford Butcher touched Elaine Hartzog's vagina under her clothes. One time, Butcher told Elaine to take her clothing off, she complied, and Butcher touched her vagina. Butcher told Elaine not to tell anyone, otherwise he would not give her food after working with the dogs.

Milford Butcher directed Elaine to sit on his lap and steer his Jeep. While Elaine steered, Butcher tickled Elaine's vagina on the outside of her clothes. Butcher's finger once penetrated Elaine's vagina. On one occasion, Butcher, while naked, directed her, Lowell, and Karen Gilbert to touch his penis.

Elaine Hartzog saw Milford Butcher touch Lowell's penis, sometimes with Lowell's clothing on once with his clothes removed. Elaine also observed Butcher touch Karen's vagina, once with Karen unclothed and other times with her clothed.

One day the children, including Elaine Hartzog, saw Milford Butcher carrying a gun. The children began to run home, but Butcher told them that, if they did not return, he would shoot them.

At some unknown date, Desiree Hartzog, Lowell and Elaine's mother, noticed that her children no longer wished to visit Puppy Boot Camp and made excuses to avoid going to the Butcher residence. Lowell then told his mother that "Bear had been touching their privates" and "pinching his penis." RP at 684-85. When Desiree Hartzog asked Elaine about her time at the Bucher home, Elaine cried and, after calming down, told her mother that Butcher touched her vagina. Desiree and Luke Hartzog confronted Butcher, who denied the allegations. After a conversation with the extended family, the Hartzog parents allowed Elaine and Lowell to return to the Butcher property to work with the dogs because the parents thought their children misunderstood the behavior of Butcher. Kathi Butcher then promised to stay with the children at all times.

At some later date, Lowell Hartzog reported to his mother that Milford Butcher continued to touch his penis and increased the frequency of the touching. Desiree Hartzog questioned Elaine outside the presence of Lowell. Elaine haltingly told her mother that Butcher ordered the children to remove their clothes and Butcher then licked their privates.

On June 30, 2014, Luke Hartzog telephoned Paula Gilbert and advised her that his children reported that Milford Butcher directed them to remove their pants. Paula asked her daughter Karen whether anything at the Butcher household discomforted her. Karen pointed to her vagina and reported that "she didn't like it when Bear touched her." RP at

5

538. Karen told both parents that she might have blood in her stool because "Bear keeps putting his fingers down there." RP at 422.

Ryan Gilbert reported Milford Butcher's conduct to law enforcement. Ryan did not then press Karen for any more details of the misconduct.

On July 2, 2014, Spokane County Sheriff's Office Deputy Craig Chamberlin interviewed Ryan Gilbert. Ryan commented that Bear Butcher inserted his fingers inside his daughter's vagina. On July 3, Desiree Hartzog contacted Deputy Chamberlin and informed him of her children's reports about Milford Butcher's behavior.

On August 5, 2014, forensic child interviewer, Karen Winston, conducted separate interviews of Karen Gilbert and Lowell Hartzog. On the same day, Spokane County Sheriff's Office Detective Brandon Armstrong interviewed Elaine Hartzog. The interviews were audio and video recorded.

PROCEDURE

The State of Washington charged Milford "Bear" Butcher with eight crimes: (1) first degree child rape of Karen Gilbert occurring between August 1, 2010 and July 2, 2014, (2) first degree child molestation of Karen occurring between August 1, 2010 and July 2, 2014, (3) first degree molestation of Elaine Hartzog occurring between July 23, 2010 and July 2, 2014, (4) first degree child molestation of Elaine occurring between July 23, 2010 and July 2, 2014, (5) first degree child rape of Elaine occurring between July 23, 2010 and July 2, 2014, (6) first degree child molestation of Lowell Hartzog occurring

6

between July 25, 2010 and July 2, 2014, (7) first degree child molestation of Lowell

occurring between July 25, 2010 and July 2, 2014, and (8) first degree child molestation

of Lowell occurring between July 25, 2010 and July 2, 2014.

During jury selection on January 3, 2018, the State used peremptory challenges to

strike at least three venire people: juror 11 Goua Xiong, juror 19 Johnrey Hopa, and juror

32 Ricardo Manning. Milford Butcher alleged a *Batson* violation after the striking of

each of the three. *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69

(1986).

After the preemptory removal of Goua Xiong from the jury, Milford Butcher's

counsel remarked:

> [THE DEFENSE]: Yes, Your Honor. That's a gentleman—I can't
> pronounce his name, Judge. Appears to be Goua Xiong, Number 11, and
> that's the first strike of the prosecutor. I think he's probably one of three or
> four people on the jury of color, and I'm making a *Batson* challenge.

RP (Jan. 3, 2018) at 242. The State's attorney responded:

> [THE STATE]: Your Honor, the basis that I have for scratching that
> juror was that he indicated awareness of a friend who had been accused of
> child molestation, and he indicated that he had real concerns about whether
> those accusations were true, and that he had a real problem with the delayed
> disclosure in that case, and it was for those reasons that I struck this juror.
> It had nothing to do with his race. The defendant is Caucasian. I
> think every person who's either a witness or a victim in this case is
> Caucasian. There just is no racial basis for me to strike that juror.

7

RP (Jan. 3, 2018) at 242-43.  The trial court concluded that the State presented a race

neutral basis for removing Goua Xiong from the jury panel and denied Milford Butcher's

*Batson* challenge.

Milford Butcher identified juror 19 Johnrey Hapa as possibly being of Asian

heritage and also challenged the State's exercise of a peremptory challenge of Hapa.

Defense counsel commented:

> Your Honor, Johnrey Hapa is another *Batson* challenge.  I think he's
> of Asian de[s]cent.

RP (Jan. 3, 2018) at 245.  The prosecuting attorney responded:

> [THE STATE]: Judge, it's very difficult for me under these
> circumstances because I was not aware of nor did I make any notes
> regarding the juror's race, and for the record, none of the jurors are in the
> courtroom right now.  We're doing this while the jury is on a recess.
> So I don't know or didn't notice any.  He was of some recognized
> ethnic minority.  My basis for striking him in this case was; A, I have
> almost no information on him.  It didn't appear that he spoke up on any of
> the questions.  The detective didn't have any notes about him from any of
> the questions that I'd asked or that Mr. Phelps had asked, and he has no
> children, and my preference in a case like this when I'm dealing with
> younger jurors is to at least have somebody who has experience either
> working with or having their own children to help them understand.
> So, Judge, those are the bases for my strike if Your Honor does find
> that Juror Number 19 was part of an ethnic minority.

RP (Jan. 3, 2018) at 245-46.

The trial court agreed with Milford Butcher that Johnrey Hapa was of Asian

descent.  The court concurred with the State's assessment that Hapa rarely spoke during

jury selection and his biography indicated he was single with no children.  Butcher

8

asserted that the State's proffered reasons for excluding Hapa did not satisfy *Batson*. The

State's attorney added:

> I want people who understand children and, also, when a person doesn't pipe up or volunteer anything, I try to have a pretty engaging voir dire. It's a little bit of a red flag to me.
> Also, I'll point out, I mean, I hate telling [sic] these things up because it sounds like points, and it makes it sound racist, but I left Number 13, Mr. Valenzuela, who appears to be Hispanic, and his name suggests is. I have no racial reason for dismissing any of the challenges—dismissing any of the jurors that I challenged preemptory.

RP (Jan. 3, 2018) at 248-49. The trial court denied the second *Batson* challenge because

the State's explanations were acceptable reasons for striking the juror other than the

juror's race.

The State exercised a peremptory strike for prospective juror 32 Ricardo Manning.

Defense counsel lodged another *Batson* challenge. Counsel commented that he did not

know whether Manning was Hispanic or Asian, but that Manning did not appear to be

non-Hispanic Caucasian. The prosecutor responded:

> [THE STATE]: Well, Judge, I didn't notice Mr. Manning being of another race frankly. He didn't strike me as being a member of an ethnic minority group. His first name is Ricardo, which could mean that it's a name of Hispanic de[s]cent, could be Spanish, Latin American, Mexican.
> The reason I chose to remove him I wasn't very happy with either 30 or 32 because neither of them have children as I've discussed before. However, Mr. Manning was the older of the two, and I feel like if I end up having to use one of the alternates because of the delayed disclosure and maybe some new thoughts or more recent thoughts about the importance of protecting children from child sexual abuse that I would be better off with a slightly younger juror.

Also, [Juror 30's] wife is in the medical field; whereas, Mr. Manning's wife was in manufacturing. I'm hoping that contact with the medical field may make him more sympathetic to the victims in this case.

So those are the reasons that I struck Mr. Manning, who, again, I did not notice as being of a different race.

RP (Jan. 3, 2018) at 252-53. At the time of the State's removal of Ricardo Manning,

juror 30 was tentatively seated as the first alternate juror.

The trial court denied Milford Butcher's third *Batson* challenge. The court

commented that the State presented a sufficient race neutral basis.

After empaneling of the jury, the prosecutor noted that at least one minority juror

sat on the panel:

[THE STATE]: I don't like to talk about a person based just on what they look like, but as the jury panel was seated, I looked at Juror Number 3, Mr. Everett, and if I had to guess Mr. Everett's ethnicity, he appears to me to be an Asian man even though his last name is obviously not Asian. I don't know if he's of mixed race or if he's Caucasian and he just looks Asian to me, which is again why I'm hesitant to bring it up in the first place.

I do want the record to be clear there's at least one ethnic minority that seems easy to identify, and I believe Mr. Everett may be, too. So as distasteful as the conversation is, I think it's important to point out for the record.

RP (Jan. 3, 2018) at 261. The trial court added:

THE COURT: I'll note it for the record that it's hard anymore to look at people and guess what ethnicity they are. Obviously, Number 1, Eugene Valenzuela, just by the name seems to have some kind of ethnic background. I do note Number 3 appeared to be of some Asian de[s]cent. Anymore I'm not really sure, but the Court made its rulings.

RP (Jan. 3, 2018) at 262-63.

10

Karen Winston, former director of the Child Advocacy Center at Partners with Families and Children, testified at trial. Winston conducted a child interview with Karen Gilbert on August 5, 2014, when Karen was eight years old. The trial court admitted the recorded interview and played the video for the jury. During the interview, Winston offered Karen body diagrams and asked Karen to mark the areas where Milford Butcher touched her. Karen circled the crotch area, calling it a "private" and the buttocks, calling it the "bottom." Ex. P-10, P-11; RP at 376. Karen told Winston that Butcher touched her privates "many many times" and "only in the truck." Ex. P-8, at 8 min., 30-59 sec. (audio of child interview with Karen). She stated that he sneaked into her pants and underneath her underwear, which made her a "crazy driver." Ex. P-8, at 10 min., 20-39 sec. Karen described that Butcher used his finger, that the finger went "in the inside," and that the finger hurt her. Ex. P-8, at 14 min., 24-50 sec. She knew Butcher inserted his finger because "I would recognize his finger anywhere in my body." Ex. P-8, at 14 min. 39-45 sec.

Karen Winston also conducted a forensic interview with Lowell Hartzog. The trial court admitted the recorded interview as Exhibit P-3, and played it for the jury. During the interview, Lowell told Winston that "Bear" forced him, his sister, and his cousins to pull their pants down while Kathi Butcher smoked elsewhere. Ex. P-3, at 10 min.-12 min., 10 sec. (audio of child interview with Lowell). Lowell reported that Butcher made him "punch [Butcher's] privates," while Butcher controlled his hands, and

11

that "he did it gently." Ex. P-3, at 14 min., 13-59 sec. Lowell also asserted that Butcher tickled him high on his chest and then moved down to his penis. Ex. P-3, at 25 min., 30-40 sec. Butcher also touched his buttocks on the outside. Ex. P-3, at 23 min., 5-7 sec. Winston presented Lowell with body diagrams, and Lowell marked his penis and buttocks. On an adult body diagram, Lowell marked that he had to touch Butcher's penis.

Detective Brandon Armstrong testified that Elaine Hartzog was nearly nine years old at the time he interviewed her. The trial court admitted as Exhibit P-1 the recorded interview, and the State played the recording to the jury. During the interview, Elaine described Milford Butcher "poking" her privates with his finger while she drove his Jeep. Ex. P-1, at 13 min., 39-50 sec. (audio of child interview with Elaine). Elaine added that Butcher cornered the children and pulled their pants down. Ex. P-1, at 9 min., 20-30 sec. Sometimes Butcher touched her on top of her clothing and sometimes he poked "inside" her pants. Ex. P-1, at 13 min., 2-sec. to 14 min., 55 sec. Butcher also played "tickle monster" with her, by tickling her belly and her vagina. Ex. P-1, at 25 min., 10-55 sec. Butcher poked her privates on the inside, "on the top" when she was alone, but he touched her on the outside of her clothes when the other children were present. Ex. P-1, at 29 min., 1-37 sec.

After the State rested its case, Milford Butcher moved to dismiss based on counts I and II being the same course of conduct, counts III and IV being the same course of

conduct, count V being part of the same course of conduct, and counts VI, VII, and VIII

being the same course of conduct. Butcher asked the trial court to dismiss, at a

minimum, two of those counts. Butcher also argued that the State presented no evidence

that he raped Elaine Hartzog, the basis of count V. The trial court ruled that same course

of conduct was a sentencing, not a charging, issue and sufficient testimony supported all

eight charges.

Milford Butcher testified in his own behalf. He denied having any sexual contact

with the kids. Butcher averred that, after the first allegations of his touching in 2011, he

allowed the children back in his home because the children were confused and the

allegations were of little importance. After the 2011 accusations, Kathi did not leave

Butcher alone with the children. Butcher conceded that he allowed the children to sit on

his lap while he drove his Jeep. He wrapped his hand around the driver's waist to keep

him or her from the steering wheel. Butcher insisted that he did not place his hand close

to their privates during the drives.

During the State's closing argument, the prosecuting attorney listed for the jury

the particular incidents relating to each count. Count I, first degree rape of a child,

involved Milford Butcher's penetration of Karen Gilbert while in the Jeep. Count II,

child molestation in the first degree, involved touching Karen without penetration in the

Jeep. Count III, child molestation in the first degree, involved the touching of Elaine

Hartzog without penetration while in the Jeep. Count IV, child molestation in the first

degree, involved Elaine while Milford Butcher played "tickle monster." RP at 1172.

Count V, rape of a child in the first degree, refers to the occasion when Butcher poked

inside Elaine's vagina. Count VI, child molestation in the first degree, involved Butcher

forcing Lowell Hartzog to touch Butcher's penis. Count VII, child molestation in the

first degree, involved the touching of Lowell's penis while Lowell drove the Jeep.

Finally, Count VIII, child molestation in the first degree, involved the touching of

Lowell's bottom.

The jury returned guilty verdicts on each count. At the sentencing hearing,

Milford Butcher argued double jeopardy and same criminal conduct. Butcher noted the

way the State charged the crimes acted as an enhancement to the sentence. Moreover,

Butcher argued the multipliers under the sentencing scheme constituted double jeopardy

because it permitted further punishment on top of the original punishment for the crime.

Butcher also argued the enhancements were not found by a jury so they were improper.

The State denied that any of offense constituted the same criminal conduct as another

offense because the acts occurred at different times and at different places.

The trial court concluded that the evidence showed that the crimes did not occur at

the same time and place, and, therefore, no two convictions constituted the same criminal

conduct. The court also rejected the application of double jeopardy.

LAW AND ANALYSIS

On appeal, Milford Butcher challenges his convictions based on a lack of evidence and the State's purported discriminatory choosing of jurors. Butcher challenges his sentence on the basis of double jeopardy and same criminal conduct. We address his contention of insufficient evidence first since we would dismiss the charges if we agreed.

Sufficiency of Evidence

Milford Butcher contends that the jury needed to speculate in order to find him guilty of each crime charged. In turn, he claims that insufficient evidence supports each conviction.

Although he recognizes the principles of law applied to sufficiency of the evidence challenges, Milford Butcher argues that the testimony of the children contained inconsistencies and that the children falsely asserted that he displayed a gun. In support of these factual contentions in his brief's argument section, Butcher cites "See Statement of the Case." Br. of Appellant at 29. Butcher, however, fails to cite specific trial testimony to show inconsistencies in the children's testimony or to show that the evidence did not fulfill each element of the crimes. He also fails to discuss the elements of rape of a child in the first degree or first degree child molestation and whether the State presented evidence to support those elements. Finally, we note that Butcher's contentions conflict with the rule that the jury decides who told the truth.

We decline to address Milford Butcher's sufficiency of the evidence argument. RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." This court does not consider conclusory arguments unsupported by citation to authority. *Joy v. Department of Labor & Industries*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

Jury Selection

On appeal, Milford Butcher contends the trial court erred when it denied his *Batson* challenges to the State's peremptory removal of the only three minority jurors in the box. The State disputes that it removed all of the minority members of the venire. The State argues that it presented sufficient race neutral reasons for the peremptory challenges and that an objective observer would not conclude that race was a factor in the exercise of the strikes.

The State denies a criminal defendant equal protection of the laws when it excludes members of the jury, even during a peremptory challenge, on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). A juror may be excluded if unfit, but a person's race does not render him or her unfit as a juror.

*Thiel v. Southern Pacific Co.*, 328 U.S. 217, 227, 66 S. Ct. 984, 90 L. Ed. 1181 (1946);

*Batson v. Kentucky*, 476 U.S. at 87.

Washington cases apply a three-part test when the accused asserts that the State exercised a peremptory strike based on race. *State v. Jefferson*, 192 Wn.2d 225, 231, 429 P.3d 467 (2018). First, the defendant must establish a prima facie case that suggests an inference of discriminatory purpose. *Batson v. Kentucky*, 476 U.S. at 93-94; *State v. Jefferson*, 192 Wn.2d at 231-32. As part of the first prong, the accused must first demonstrate that the struck juror is a member of a "cognizable racial group." *City of Seattle v. Erickson*, 188 Wn.2d 721, 732, 398 P.3d 1124 (2017). When assessing whether the defendant establishes a prima facie case, the trial court should consider all relevant circumstances, including a pattern of strikes against members of a constitutionally cognizable group and the prosecutor's questions and statements during voir dire. *Batson v. Kentucky*, 476 U.S. at 96-97. More importantly, when the State strikes the final member of a racially cognizable group, the accused automatically presents a prima facie case of discrimination. *State v. Jefferson*, 192 Wn.2d at 232; *City of Seattle v. Erickson*, 188 Wn.2d at 724 (2017).

Under the second prong of the Washington test, if the defendant shows a prima facie case, the burden shifts to the prosecutor to provide a race-neutral explanation for the challenge. *State v. Jefferson*, 192 Wn.2d at 232. Third, if the State meets its burden at step two, the trial court must determine if the defendant establishes "purposeful

17

discrimination." *State v. Jefferson*, 192 Wn.2d at 232. This appeals court reviews *Batson* challenges for clear error and defers to the trial court to the extent that its rulings are factual. *State v. Jefferson*, 192 Wn.2d at 232.

As noted earlier, step one of the *Batson* analysis requires the defendant to establish a prima facie case giving rise to an inference of discriminatory purpose. Milford Butcher solely contends that he made a prima facie showing of racial discrimination by relying on the bright line rule announced in *City of Seattle v. Erickson* to the effect that the State removed the final member of a racial group from the jury pool.

On appeal, Milford Butcher contends that Goua Xiong, Johnrey Hopa, and Ricardo Manning, the three struck jurors, were each the sole member of a particular race in the jury venire. When challenging the removal of Goua Xiong, trial counsel stated that Xiong was a juror of color. But he did not indicate the race. We might guess that, based on his name, Xiong is of Asian descent.

When challenging the State's peremptory removal of Johnrey Hapa, defense counsel remarked: "I think he's of Asian de[s]cent." RP at 245. The trial court agreed with Butcher that Hapa was of Asian descent.

Next, when the State exercised a peremptory strike for Ricardo Manning, Milford Butcher's counsel responded that he did not know whether Manning was either Hispanic or Asian, but exclaimed that Manning was not white. The prosecutor denied that

18

Manning was of any ethnicity.  The State's attorney emphasized that he left a Hispanic named Valenzuela on the jury.

After empanelment of the jury, the State's attorney commented that juror 3, Steven Everett, was of Asian descent despite his last name.  The court further mentioned juror Eugene Valenzuela was Hispanic and that juror Steven Everett appeared to be of Asian descent.  Butcher did not challenge the trial court's and the State's assessment that Everett was of Asian descent.

We conclude that Milford Butcher did not establish a per se prima facie case for his *Batson* challenge.  Assuming Goua Xiong and Johnrey Hapa are Asian, the final panel included the Asian Steven Everett.  We do not know if, during a *Batson* challenge, a "cognizable racial group" is Asians as a whole, or if the litigants should establish the discreet nationality or subrace of the jurors.  Butcher cites no law to assist us.  Assuming Ricardo Manning to be of Hispanic descent, the cognizable group of Hispanics was represented on the jury by Steve Valenzuela.

We note some uncertainty as to the identity of the races of jurors.  Other courts have held that the accused carries the burden of showing the ethnicity of removed and remaining jurors when asserting a *Batson* challenge on appeal.  *State v. Bennett*, 843 S.E.2d 222, 231, (N.C. 2020); *State v. Raynor*, 334 Conn. 264, 221 A.3d 401, 404 (2019); *Commonwealth v. Reid*, 627 Pa. 151, 99 A.3d 470, 485 (2014).  Subjective impressions

19

of race by counsel do not suffice. *State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158, 166 (1991).

## Same Criminal Conduct

Milford Butcher contends that the multiple convictions involving Karen Gilbert were one in fact and law as they were acts done to the same victim during the same course of conduct. Butcher repeats this argument with the multiple convictions involving Elaine Hartzog. Because the child molestation and rape merged and were one offense, Butcher further argues that sentencing him for each offense separately with respect to Karen and Elaine violated double jeopardy. The State responds that the trial court properly determined the offenses were not the same course of conduct.

A determination of "same criminal conduct" at sentencing affects the standard range sentence by altering the offender score, calculated by adding a specified number of points for each prior offense. RCW 9.94A.525. For purposes of the offender score calculation, current offenses are treated as prior convictions. RCW 9.94A.589 (1)(a). But, "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." RCW 9.94A.589 (1)(a).

Offenses are the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589 (1)(a). Deciding whether crimes involve the same time, place, and victim

involves determinations of fact. *State v. Graciano*, 176 Wn.2d 531, 536, 295 P.3d 219 (2013). A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law. *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993). The defendant has the burden of proving that current offenses constitute the same criminal conduct. *State v. Graciano*, 176 Wn.2d at 539-40. Courts narrowly construe the same criminal conduct rule, and, if any of the three elements is missing, each conviction must count separately in the calculation of the defendant's offense score. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

Milford Butcher claims only that the crimes of rape of a child in the first degree of Karen Gilbert and Elaine Hartzog constitute the same criminal conduct as the first degree child molestation charges involving the respective child. We disagree. Elaine Hartzog and Karen Gilbert testified that the sexual contact occurred at different times over many years. Sometimes the sexual touching occurred in Butcher's vehicle, other times it happened inside the home. The abuse did not occur at the same time and place.

Both girls also described the acts of molestation as being separate from the acts of rape. Karen recalled Butcher touching her vagina both over and under her clothes at different times. Sometimes, Butcher's finger penetrated Karen's vagina. Karen noted that this occurred every weekend that she sat in the driver's seat of the car. Similarly, Elaine testified that Butcher asked her to take her clothing off, she complied, and Milford

21

then touched her vagina. On a different occasion, Butcher's finger penetrated Elaine's vagina while she drove the Jeep.

## Double Jeopardy

Milford Butcher next argues that his first degree child rape and first degree child molestation convictions respectively relating to Karen Gilbert and Elaine Hartzog violate the prohibition against double jeopardy because the rape and molestation charges merge into one crime. We disagree.

The United States Constitution provides that a person may not be subject for the same offense to be twice put in jeopardy of life or limb. U.S. CONST. amend. V. Similarly, the Washington State Constitution provides that a person may not be twice put in jeopardy for the same offense. WASH. CONST. art. I, § 9. The guaranty against double jeopardy protects against multiple punishments for the same offense. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). "A double jeopardy claim is of constitutional proportions and may be raised for the first time on appeal." *State v. Mutch*, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011). This court's review is de novo. *State v. Mutch*, 171 Wn.2d at 662. The remedy for a double jeopardy violation is to vacate the lesser of the two convictions. *State v. Womac*, 160 Wn.2d 643, 660, 160 P.3d 40 (2007).

To determine whether multiple convictions violate the prohibition against double jeopardy, this court first examines the language of the applicable statutes. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). If the statutes do not expressly allow

for multiple convictions arising from the same act, this court then determines whether two statutory offenses are the same in law and in fact. *State v. Calle*, 125 Wn.2d at 777. If each offense includes elements not included in the other, the offenses are different and a presumption arises that the legislature intended to allow multiple punishments for the same act. *State v. Calle*, 125 Wn.2d at 777.

An individual is guilty of first degree child rape "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). An individual is guilty of first degree child molestation "when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "Sexual contact" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party." RCW 9A.44.010(2).

Because neither statute expressly authorizes multiple convictions for offenses arising out of a single act, the next step is to determine whether the two statutory offenses are the same in law and in fact. Offenses are not the same if there is any element in one offense not included in the other and proof of one offense would not necessarily prove the other. *State v. Trujillo*, 112 Wn. App. 390, 410, 49 P.3d 935 (2002). Child

molestation requires that the offender act for the purpose of sexual gratification, an element not included in first degree rape of a child, and first degree rape of a child requires that penetration or oral to genital contact occur, an element not required in child molestation. Thus, each offense requires proof of an element that the other does not, and therefore "the offenses are not the 'same offense' for double jeopardy purposes." *State v. Jones*, 71 Wn. App. 798, 825, 863 P.2d 85 (1993). Under the same analysis, "child molestation does not merge as a lesser included offense of rape of a child." *State v. Jones*, 71 Wn. App. at 825.

Although *State v. Jones* held that child molestation and rape of a child do not merge, Milford Butcher, relying solely on *State v. Calle*, 125 Wn.2d 769 (1995), asserts that the rape and molestation charges merge when the molestation occurs during the commission of the rape. Without a citation to the record, Butcher argues he was convicted of child molestation by virtue of the fact that child molestation occurred immediately preceding or during the commission of the rape.

*State v. Calle* does not assist Milford Butcher. The trial court convicted James Calle of first degree incest and second degree rape arising from a single act of intercourse. The Supreme Court recognized that the offenses charged may be identical in fact since both occurred when Calle had sexual intercourse with the victim. Nevertheless, the convictions were not identical in law. Incest requires proof of a

familial relationship, while rape requires proof of force. Thus, double jeopardy did not preclude punishment for both convictions.

Similarly the offenses of rape of a child and child molestation are not identical in law. Nor did the convictions relating to Karen Gilbert and Elaine Hartzog arise from a single act of molestation and rape. Both girls testified that the molestation occurred over a period of time, on different occasions, either inside the house or in Milford Butcher's Jeep. During at least one instance, Butcher respectively penetrated the vagina of a child, turning the act into a rape. The State elected the acts supporting each crime, and each of those acts were distinct.

## CONCLUSIONS

We affirm Milford Butcher's convictions and his sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____　　　　_____
Lawrence-Berrey, J.　　　　　　　　　　　　Pennell, C.J.

25