IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40354-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID WINSOR RICHINS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — David Richins was charged with attempted rape of a child in the second degree, attempted child molestation in the second degree, communication with a minor for immoral purposes, attempted endangerment with controlled substance, possession of a controlled substance, and attempted tampering with physical evidence. The charges stem from a pedophile sting operation conducted by the Kittitas County Sheriff's Office.

At the conclusion of a jury trial, Mr. Richins was found guilty on all but the attempted endangerment with controlled substance charge.[1] Mr. Richins appeals,

---

[1] The court dismissed the attempted endangerment with controlled substance at the end of the State's case.

arguing: (1) the evidence was insufficient to support a conviction for attempted tampering with evidence; (2) the prosecutor engaged in prejudicial misconduct; (3) the sting operation amounts to police misconduct; (4) he was deprived of his right to due process due to outrageous police conduct; and (5) he received ineffective assistance from his trial attorney. Mr. Richins also raises two issues related to his sentence in a statement of additional grounds for review (SAG). We disagree with each of Mr. Richins' arguments and affirm.

## BACKGROUND

In 2023, the Kittitas County Sheriff's Office conducted a pedophile sting operation as part of the Washington State Internet Crimes Against Children task force. In October 2023, Detective Drew Sinclair coordinated with a website called "Skip the Games" to conduct an undercover investigation. Clerk's Papers (CP) at 2. Detective Sinclair described Skip the Games as an online escort service frequented by people seeking prostitutes. Skip the Games cooperates with law enforcement to prevent its website from being used for child exploitation and human trafficking.

On December 6, 2023, Detective Sinclair placed an ad on Skip the Games, representing that the ad was posted by a 19-year-old female from Ellensburg named "Alex." Rep. of Proc. (RP) at 207. The ad read, "hey, I'm Alex and I'm from E-Burg. I'm just trying to make some extra, and then a dollar sign. I've never done this before, so be patient and don't be a jerk." RP at 207. Mr. Richins responded to the ad via text

2

message.  The text messages "Alex" received were verified as sent from Mr. Richins'

phone number.  Mr. Richins sent four messages to "Alex" before "Alex" responded.

"Alex" first responded, "Im [sic] so sorry . . . that wasnt [sic] supposed to post," followed

by "I was just messing around.  Im [sic] 13.  It wasnt [sic] supposed to be real."  Ex.

PLA-003 at 1.  Thereafter, Mr. Richins and "Alex" traded photographs.  Detective

Sinclair used an age regressed image of Deputy Elizabeth Spurling, who was

approximately 22 years old at the time, to pose as "Alex."

Mr. Richins eventually introduced the topic of sex into the conversation and

suggested the two meet in person.  On December 19, Mr. Richins asked Alex, "Do you

think you'll be able to get away for awhile to see me?"  Ex. PLA-003 at 6.  "Alex"

responded by suggesting she could stay with a friend, an offer Mr. Richins encouraged

her to pursue.  The conversation between the two then became sexually explicit.  Mr.

Richins eventually arranged to meet "Alex" near a Pizza Hut in Ellensburg.  He was

arrested upon his arrival.

At the time of his arrest, Mr. Richins' vehicle displayed a license plate for a

different vehicle.  A search of Mr. Richins' vehicle yielded the correct license plate for

his vehicle.  Numerous other items were found in Mr. Richins' vehicle, including: a

suitcase with hygiene products and nearly 24 grams of methamphetamine; a pipe for

ingesting methamphetamine; condoms and lubricant; a laptop computer; and a gift bag

that contained a candle, chocolates, body spray, jewelry, tissue paper, a teddy bear, a

3

coloring book, and some Reese's candy.  Mr. Richins' vehicle and laptop computer were eventually released to an acquaintance, Terry Mendoza.

While in custody, Mr. Richins communicated with Ms. Mendoza and requested she "go on the find my app select my phone.  Mark it as lost and erase it."  Ex. PLA-016. Detective Sinclair testified at trial that he did not "know for a fact that—that [Mr. Richins] was telling [Ms. Mendoza] to erase the data on his phone."  RP at 346.  A "hand search" of Mr. Richins' phone revealed that "Alex, 13" was saved as a contact, and Detective Sinclair located a test text message that he had earlier sent.  RP at 305.

Mr. Richins was charged with attempted rape of a child in the second degree, attempted child molestation in the second degree, communication with a minor for immoral purposes, attempted endangerment with controlled substance, possession of a controlled substance, and attempted tampering with physical evidence.  The charges were tried to a jury.  At the conclusion of trial, the jury found Mr. Richins guilty on all but the attempted endangerment with controlled substance charge.  He was later sentenced to 89 months on the attempted rape of a child in the second degree charge with the sentences on the other convictions running concurrently.  Mr. Richins was placed on community custody for life.

Mr. Richins timely appeals.

ANALYSIS

ATTEMPTED TAMPERING WITH PHYSICAL EVIDENCE

Mr. Richins argues the State failed to prove beyond a reasonable doubt each element of the crime of attempted tampering with physical evidence. While Mr. Richins' specific argument is unclear, we surmise he is claiming the evidence was insufficient to support a conviction because no data was found on his phone that was relevant to this case and uncertainty existed as to whether he directed Ms. Mendoza to erase data from his phone. We disagree with his arguments.

The due process clause of the Fourteenth Amendment to the United States Constitution requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *In the Matter of Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The sufficiency of the evidence is a question of law this court reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014), *abrogated by State v. Roberts*, _ Wn.3d _, 572 P.3d 1191 (2025).

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d

5

1068 (1992). When analyzing a sufficiency of the evidence claim, all reasonable

inferences must be drawn in favor of the State. *Id.* "[I]nferences based on circumstantial

evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178

Wn.2d 1, 16, 309 P.3d 318 (2013).

"Tampering with physical evidence" is defined as:

(1) A person is guilty of tampering with physical evidence if, having reason to believe that an official proceeding is pending or about to be instituted and acting without legal right or authority, he or she:
(a) Destroys, mutilates, conceals, removes, or alters physical evidence with intent to impair its appearance, character, or availability in such pending or prospective official proceeding.

RCW 9A.72.150. "Criminal attempt" is defined at:

(1) A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime.
(2) If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, it is no defense to a prosecution of such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission.

RCW 9A.28.020.

First, Mr. Richins asserts, "[w]hen [Detective Matthew Martin] conducted the cell

phone dump he did not find anything on Mr. Richins' phone related to this case." Br. of

Appellant at 15. Contrary to this argument, Detective Sinclair testified that he found a

contact for "Alex, 13" during a search of Mr. Richins' phone. RP at 305. This contact

corresponded to Detective Sinclair who held himself out to Mr. Richins as "Alex," a 13-

6

year-old girl. Further, a "test text" that had been sent earlier by Detective Sinclair was discovered on Mr. Richins' phone. RP at 305.

In viewing this evidence in a light most favorable to the State, any rational trier of fact could have found that Mr. Richins' phone contained evidence relevant to this case.

Secondly, relying on Detective Sinclair's testimony that he did not "know for a fact that—that [Mr. Richins] was telling [Ms. Mendoza] to erase the data on his phone," Mr. Richins argues uncertainty existed as to whether he directed Ms. Mendoza to erase data from his phone. RP at 346.

Although Detective Sinclair may not have "know[n] for a fact—that [Mr. Richins] was telling [Ms. Mendoza] to erase the data on his phone," it is the function and province of the jury to weigh the evidence, determine the credibility of the witnesses, and decide the disputed questions of fact. RP at 346; *See State v. Dietrich*, 75 Wn.2d 676, 677-78, 453 P.2d 654 (1969).

The jury was presented with Mr. Richins' message to Ms. Mendoza stating, "Also go on the find my app select my phone. Mark it as lost and erase it." Ex. PLA-016. The State also presented evidence that information related to Mr. Richins' conversations with "Alex" were found on his phone. In viewing this evidence in a light most favorable to the State, any rational trier of fact could have found that Mr. Richins directed Ms. Mendoza to erase data from his phone.

Sufficient evidence supports Mr. Richins' conviction for attempted tampering with physical evidence.

PROSECUTORIAL MISCONDUCT

Mr. Richins challenges his conviction for communication with a minor for immoral purposes, arguing the prosecutor engaged in misconduct by introducing the topic of grooming in his opening statement and during direct examination of a detective. We decline review of the claimed error due to the inadequacy of the briefing.

"Prosecutorial misconduct is grounds for reversal if 'the prosecuting attorney's conduct was both improper and prejudicial.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). "[T]he defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

If a defendant fails to object at trial to the prosecutor's alleged misconduct, then "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

RAP 10.3(a)(6) requires a party to an appeal to provide argument in support of the issues presented for review and citations to relevant legal authority. The purpose of RAP 10.3(a) "is to enable the court and opposing counsel . . . [to] efficiently and expeditiously . . . review the relevant legal authority." *Hurlbert v. Gordon*, 64 Wn. App. 386, 400, 824 P.2d 1238 (1992). Consequently, we will not consider conclusory arguments unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). Moreover, passing treatment of an issue or lack of reasoned argument is insufficient to merit this court's consideration. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012). "A party waives an assignment of error not adequately argued in its brief." *Milligan v. Thompson*, 110 Wn. App. 628, 635, 42 P.3d 418 (2002).

Here, Mr. Richins "recognizes that defense counsel did not make an objection to the questioning and/or the opening statement." Br. of Appellant at 28. Notwithstanding this recognition, Mr. Richins fails to cite the relevant authority for prosecutorial misconduct occurring absent an objection from the defense. Further, Mr. Richins fails to address whether a curative instruction would have obviated any prejudicial effect on the jury or advance any argument as to how the alleged misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict.

Based on the deficient briefing, we decline review of Mr. Richins' claim of prosecutorial misconduct related to his conviction for communication with a minor for immoral purposes.

"POLICE MISCONDUCT"

Mr. Richins challenges his convictions for attempted rape of a child in the second degree and attempted child molestation in the second degree, alleging "[p]olice [m]isconduct." Br. of Appellant at 30. Mr. Richins provides no authority for this claimed error, save the caption "Police Misconduct." Br. of Appellant at 30. Rather than presenting legal authority, Mr. Richins merely alleges the pedophile sting operation is intended to catch predators before they have an opportunity to strike. We decline review of his claimed error of "police misconduct" due to his lack of compliance with RAP 10.3(a)(6).

OUTRAGEOUS POLICE CONDUCT

Mr. Richins contends the pedophile sting operation amounted to outrageous police conduct in violation of his right to due process. He requests we reverse his convictions for attempted rape of a child in the second degree and attempted child molestation in the second degree. We affirm the convictions because we are bound by Supreme Court precedent.

In *State v. Patel*, the Washington State Supreme Court reaffirmed its "holding in [*State v. Townsend*, 147 Wn.2d 666, 57 P.3d 255 (2002)] and conclude[d] that a

10

defendant who specifically intends to have sex with a child may be convicted of attempted rape of a child even where the child is a fictional character created as part of a police sting operation." 170 Wn.2d 476, 485, 242 P.3d 856 (2010). The court held, "where the victim is a fictitious character created by the police, the State may prove attempted rape of a child by establishing the defendant specifically intended to have sex with an underage person and took substantial steps toward that objective." *Id*. at 486.

Mr. Richins acknowledges "that legal precedent is difficult to overturn" but "[n]evertheless, he submits that the factual predicates in his case are of such a nature as to require reconsideration of that precedent." Br. of Appellant at 39. Mr. Richins directs us to *State v. Lively*, 130 Wn.2d 1, 921 P.2d 1035 (1996) to support his argument. The facts before us are analogous to *Patel* and distinguishable from *Lively*. Moreover, we decline Mr. Richins' invitation for us to reconsider Supreme Court precedent.

First, the Court of Appeals is bound by decisions of the Washington State Supreme Court. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997); *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984). Once the Supreme Court has decided an issue of law, its interpretation is binding on all lower courts until it is overruled by the Supreme Court. *Godefroy v. Reilly*, 146 Wash. 257, 259, 262 P. 639 (1928).

Secondly, the facts before us are analogous to those in *Patel*. In remarkable similarity, Mr. Patel was convicted of attempted second degree rape of a child following

11

an internet sting operation conducted by the police. *Patel*, 170 Wn.2d at 477. There, like in this case, Mr. Patel engaged in a sexually explicit conversation with a detective posing as a fictitious 13-year-old girl through electronic means before attempting to meet her for sex. *Id*.

Distinguishably, in *Lively*, law enforcement used a confidential informant to infiltrate Alcoholics Anonymous/Narcotics Anonymous meetings to lure a recovering drug addict into committing illegal acts. *Id*. at 23. The Supreme Court in *Lively* held, "[t]o condone the police conduct in this case is contrary to public policy and to basic principles of human decency." 130 Wn.2d at 27.

We decline to reconsider the Supreme Court's holding in *Patel* and reject Mr. Richins' claim of outrageous police conduct based on *Lively*.

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Richins argues he received ineffective assistance from his trial counsel when his attorney failed to object to portions of Detective Sinclair's testimony that amounted to opinions of guilt. We disagree that Mr. Richins' trial attorney was ineffective in failing to object.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time

on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant bears the burden of showing that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation. *Id*. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. A sufficient basis to rebut legitimate trial strategy exists when the defendant demonstrates there is "no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

13

A defendant must affirmatively prove prejudice, not simply show that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by demonstrating that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

On claims of ineffective assistance of counsel based on a failure to object "[o]nly in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019). Indeed, foregoing an objection may be a legitimate trial tactic to avoid highlighting certain evidence. *Id*. When an appellant bases his claim of ineffective assistance of counsel on trial counsel's failure to object, he is required to show that the objection would likely have succeeded. *Id*.

Mr. Richins alleges two instances of Detective Sinclair's testimony improperly invading the province of the jury, both of which were presented without objection from his attorney. In the first instance, the State was inquiring as to the status of Detective Sinclair's investigation at a specific point in time. Detective Sinclair testified:

> At this point, I thought that he—Mr. Richins had at least committed the crime of communication with a minor for immoral purposes, and that's kinda where I was at, unless he was going to take the—the conversation a little further.

RP at 238. In the second instance, the State inquired as to the basis of the charges:

14

[STATE:] But that is—but that back and forth there kind of at the bottom of—of this page here is—I mean, that is totally sexually explicit and further supporting your communication charge?

[DETECTIVE SINCLAIR:] Yeah. And to this point, not only is the communication charge there, at this point, with this sexually explicit conduct, that's when I know that if he was to arrive in Ellensburg, that he would be arrested for the attempted rape of a child.

[STATE:] Because you're drawing his intent from the content of the text messages?

[DETECTIVE SINCLAIR:] Correct. He's saying that he is—it—wants to do these things. He's said that he's gonna get a hotel room. He knows that I am not going—that I'm leaving my parents' house to meet with him, so that's kinda where I'm at.

RP at 246.

As an initial matter, Mr. Richins fails to devote any argument to trial counsel's lack of an objection not amounting to a trial tactic or strategy. Defense counsel consistently objected throughout the trial. Defense counsel may have refrained from objecting to these challenged statements to avoid highlighting testimony that was prejudicial to Mr. Richins.

Further, Mr. Richins has not demonstrated that an objection to the challenged testimony would have been successful. As to the first statement, the detective was responding to the State's inquiry as to where he was in the investigation at a specific point in time. The detective responded that, at that point, there was probable cause to arrest Mr. Richins for communication with a minor for immoral purposes. This statement was probably not relevant but falls short of being an opinion of guilt.

15

Similarly, the second challenged statement related to the detective's planned course of action if Mr. Richins arrived at the meeting location. The detective testified that Mr. Richins would be arrested for attempted rape of a child based on the explicit messages between he and "Alex" coupled with Mr. Richins' arrival at the agreed-upon meeting location. The detective's testimony that he intended on arresting Mr. Richins is not an opinion of guilt. The challenged testimony was not central to the State's case nor was defense counsel's failure to object egregious under the circumstances.

Mr. Richins has failed to establish that he received ineffective assistance from his trial attorney.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

RAP 10.10(a) allows an appellant to "file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." Mr. Richins raises two additional grounds for review related to his sentence.

We review sentencing decisions for abuse of discretion. *State v. Delbosque*, 195 Wn.2d 106, 116, 456 P.3d 806 (2020). "'Discretion may be abused if it is exercised on untenable grounds or for untenable reasons, such as a misunderstanding of the law.'" *State v. Hubbard*, 1 Wn.3d 439, 445, 527 P.3d 1152 (2023) (quoting *State v. Enriquez-Martinez*, 198 Wn.2d 98, 101, 492 P.3d 162 (2021)).

16

First, Mr. Richins argues the trial court abused its discretion when it ordered his sentences to run concurrently. Specifically, Mr. Richins complains the court's decision to order concurrent sentences was improperly based on assisting the Department of Corrections in calculating his sentence and deprived him of credit for time served and good time.

Generally, sentences for multiple current offenses will run concurrently. RCW 9.94A.589(1)(a). A sentencing court's determination of the length of sentence to impose is generally not subject to review so long as it falls within the standard sentencing range. *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). As a matter of law, there can be no abuse of discretion if a sentence falls within the sentencing range set by the legislature. *Id.* at 146-47. Nevertheless, a party may challenge the underlying legal basis for a sentence, such as a miscalculated offender score. *Id.* at 147.

Here, Mr. Richins does not claim the trial court committed legal error. Rather, he claims the court should have imposed consecutive sentences. Because the trial court sentenced Mr. Richins within the standard range on each count and followed the provisions of RCW 9.94A.589(1)(a), we find no legal error. Thus, the sentencing court did not abuse its discretion

Secondly, Mr. Richins argues the trial court erred when it ordered community custody for life.

Mr. Richins was ordered to serve a term of life on community custody on his attempted rape of a child in the second degree conviction. Attempted rape of a child in the second degree is a class A felony. RCW 9A.44.076(2). The maximum term for a class A felony is life imprisonment. RCW 9A.20.021(1)(a). A person convicted of attempted second degree rape of a child is required to serve the maximum term of the crime on community custody. RCW 9.94A.507(1)(a)(i) and (iii). Consequently, the trial court was required to order a term of life on community custody. The trial court did not abuse its discretion when it placed Mr. Richins on community custody for life.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.